Adrian W. SELBY and Jill Selby, on
behalf of themselves and others
similarly situated, Plaintiffs,

v.

**PRINCIPAL MUTUAL LIFE
INSURANCE COMPANY,**
Defendant.

No. 98CIV.5283(RLC).

United States District Court,
S.D. New York.

Sept. 15, 2000.

The Law Offices of Sheldon v. Burman, P.C., for the Plaintiffs, New York, Sheldon v. Burman, of Counsel.

Malakoff, Doyle & Finberg, P.C., for the Plaintiffs, Pittsburgh, PA, Ellen M. Doyle, of Counsel.

Leboeuf, Lamb, Greene & Macrae, L.L.P., for the Defendant, New York, Michael Lesch, Stephen H. Orel, of Counsel.

## OPINION

ROBERT L. CARTER, District Judge.

Plaintiffs Adrian W. Selby and Jill Selby ("the Selbys") allege that Principal Life Insurance Company f/k/a Principal Mutual Life Insurance Company ("Principal") committed various errors when processing their insurance claims for health benefits, and now move pursuant to Rule 23, F.R. Civ. P., to certify three plaintiff classes challenging Principal's interpretation of its infertility treatment exclusion, and challenging whether Principal's claims review and appeal procedures satisfy the Employment Retirement Income Security Act (ERISA) provisions governing the administration of health benefit plans.[1]

## I. BACKGROUND

Adrian and Jill Selby are New York residents who were enrolled in a Principal-sponsored health benefit plan; the plan was made available through Adrian Selby's employer, Carbiner International, Incorporated (the "Carbiner plan"). (Am. Cmplt. at 2).[2] The Selbys were enrolled in the Carbiner plan from April, 1993, until the plan expired in July, 1997.[3] (Id.) The Carbiner plan provided that insureds' claims for "Medically Necessary Care" would be fully reimbursed, subject to certain plan exclusions. (Doyle Aff. Ex. 2) (Am. Cmplt. at 3–4). The Carbiner plan also included an "infertility treatment exclusion," which provided that insureds would not be reimbursed for any medical costs stemming from a "confinement, treatment or service related to the restoration of fertility or the promotion of conception." (Id. at 4). The Selbys were provided with information detailing these plan provisions; however, this information did not refer to N.Y. Ins. L. § 3221(k)(6)(A) & (B),[4] or indi-

---

1. In *Selby v. Principal Mutual Life Insurance Company*, 2000 WL 178191 (S.D.N.Y. Feb.16, 2000) (Carter, J.), on review of plaintiffs' first class action complaint, the court dismissed plaintiffs' ERISA claim against Principal alleging breach of fiduciary duty, struck plaintiffs' demand for punitive damages, and limited plaintiffs' claim against Principal under N.Y. Ins. L. § 3221(k)(6)(A) & (B). ("*Selby I*"). Plaintiffs subsequently filed the First Amended Class Complaint currently before the court, and defendant stipulated to the filing of this submission.

2. The facts in this opinion are drawn from *Plaintiffs' First Amended Class Action Complaint*, ("Am.Cmplt.") filed with *Plaintiffs' Motion to Amend the Complaint* and dated May 23, 2000. Evidence that defendant submitted was also in-

cluded in the facts when this evidence did not contradict plaintiffs' pleading on the merits. *See Sirota v. Solitron Devices, Inc.*, 673 F.2d 566, 571 (2d Cir.1982) (explaining that the court may look beyond the pleadings when reviewing a motion for class certification).

3. Def. Mem. refers to *Defendant Principal Life Insurance Company's Memorandum of Law in Opposition to Plaintiffs' Motion for Class Certification*, dated June 19, 2000. Pl. Reply Mem. refers to *Plaintiffs' Reply Memorandum In Support of Their Motion For Class Certification*, dated July 7, 2000.

4. N.Y. Ins. L. § 3221(k)(6)(A) provides that "[e]very group policy issued or delivered in New York which provides coverage for hospital care shall

cate that the statute might affect Principal's interpretation of the Carbiner plan's infertility treatment exclusion. (*Id.*).[5]

## A. Infertility Treatment Dispute

The Selbys dispute with Principal began in 1996 when Ms. Selby submitted for reimbursement bills associated with treatments she had received to maintain her pregnancies. These treatments were provided by Dr. David Sami. (Am. Cmplt. at 6). Dr. Sami concluded that Ms. Selby was not infertile, because she had conceived on several occasions while under his care; rather her medical problem was that she suffered recurrent miscarriages. (*Id.*) Therefore, Dr. Sami tailored an individualized course of treatment for Ms. Selby to maintain her pregnancies: testing to determine whether she was pregnant, hormonal treatments, antibiotic drug therapies and intravenous antibiotic treatments ("pregnancy maintenance treatments"). (*Id.*). Some of these treatments were designed to alleviate Ms. Selby's cervicitis and her endocrine dysfunction, medical conditions which Dr. Sami believed were causing Ms. Selby to miscarry. (Am. Cmplt. at 7).

Principal ultimately denied Ms. Selby's claims for the pregnancy maintenance treatments, and sent Ms. Selby several computer generated claim denial letters to explain why her claims had been rejected. (Am. Cmplt. at 6) (referring to these letters as "Explanation of Benefit" letters). These letters, which were sent between March 5, 1997, and September 10, 1997, listed various codes to identify the medical procedures the claims concerned, but failed to explain which plan provisions had caused the claims to be denied. The only explanatory comments in the letters were standard computer generated remarks stating, "[w]e've excluded the non-covered charges under your plan" and "[y]our plan doesn't cover confinement, treat-

ment or service related to this condition." (Am. Cmplt. at 7).

The Selbys appealed Principal's decision to deny their claims for the pregnancy maintenance treatments. During the course of this appeal, the Selbys received a letter from Principal's Regional Processing Center, dated May 29, 1997, which stated that the pregnancy maintenance treatments Ms. Selby had received were not reimbursable under the Carbiner plan because all services related to the restoration of fertility or the promotion of conception were disallowed under the plan, unless required by state law, and New York did not require coverage for such treatment. (Am. Cmplt. at 9). Dr. Sami also sent Principal letters during the course of the appeal. (Doyle Aff. Ex. 17). His letters indicated that Ms. Selby's pregnancy maintenance treatments were covered under the Carbiner plan as treatments for endocrine dysfunction and cervicitis and, even though the treatments were also linked to pregnancy-related problems, N.Y. Ins. L. § 3221(k)(6)(A) & (B) required that the treatments be covered under the plan. (Am. Cmplt. at 9). Principal however, continued to reject the Selbys' arguments and refused to pay the costs of the pregnancy maintenance treatments.

## B. On–Line Review Dispute

After their dispute with Principal over the pregnancy maintenance treatments, the Selbys reviewed other claims they had submitted to their insurer, and learned that these bills had been automatically denied during a process called "on-line review." On-line review is the first stage in Principal's claims review process. During this review, a claim is assigned a diagnosis code based on the illness or condition the insured's doctor has identified as the reason for the insured's treatment, and the claim is assigned a procedure code for the service the doctor per-

---

not exclude coverage for hospital care for diagnosis and treatment of correctable medical conditions otherwise covered by the policy solely because the medical condition results in infertility." Section (B) establishes the identical coverage rule for hospital and surgical care.

5. Principal, however, did recognize that it needed to change the description of its infertility

treatment exclusion in its plan information in 1992, one year after N.Y. Ins. L. § 3221(k)(6)(A) & (B) was passed by the legislature. However, Principal waited until 1996 to issue new policies reflecting the provisions' effect, and did not enter these changes into its plan information booklets until 1997. (Am. Cmplt. at 4–5).

formed. If a claim lists several diagnoses in connection with a service or procedure, the claims worker only assigns the claim a single diagnosis code based on the first diagnosis the insured's doctor lists on the claim.[6] (Am. Cmplt. at 12) (Crisp. Aff. at 4).[7] After the claims worker enters a diagnosis and a procedure code for a claim, she determines if these codes match with the codes always approved for reimbursement under the insured's health benefit plan. If a match is established, the claims worker marks the claim with a "yes" code, and the claim is automatically paid. (Am. Cmplt. at 12) (Crisp. Aff. at 2). Alternatively, when a claim has been assigned a diagnosis and a procedure code that fall within a plan exclusion, the claim is automatically denied. (Am. Cmplt. at 12) (Crisp. Aff. at 2).

On review of their own records and records from Principal's files, the Selbys discovered that they had submitted claims for services that Drs. Sage Rainbow, John S. Rodman, and David Sami had performed which all listed multiple diagnoses as a basis for the treatments the doctors provided, and each of these doctors' claims was altered during on-line review so that it listed a single diagnosis. (Moore Aff. Ex. 19 & 20) These records also showed that the claims from all three doctors were subsequently denied. (Reply. Mem. at 6) (Moore Aff. Exs. 19 & 20). The Selbys thereafter filed the first amended class complaint currently before the court, challenging Principal's interpretation of its infertility treatment exclusion, and alleging that Principal's claims review and claims appeal procedures fail to comport with the ERISA guidelines governing the administration of health benefit plans.

## II. DISCUSSION

■ On review of a motion for class certification under Rule 23, F.R. Civ. P., the court assumes that the allegations raised in the plaintiff's complaint are true, and plaintiff bears the burden of establishing that the class meets the Rule 23 requirements. *See Medicare Beneficiaries' Defense Fund v. Empire Blue Cross Blue Shield*, 938 F.Supp. 1131, 1139 (E.D.N.Y.1996) ("*Medicare Beneficiaries*"). In specific, plaintiff must establish that the class meets all of the requirements of Rule 23(a), F.R. Civ. P., and show that the class meets the requirements of one of the subsections of Rule 23(b), F.R. Civ. P. *Id.* at 1140. A court may certify a class only if it is satisfied after a "rigorous analysis" that the Rule 23 requisites have been satisfied; however, it will not consider the merits of the plaintiff's claims in its analysis. *See Koppel v. 4987 Corp.*, 191 F.R.D. 360, 364 (S.D.N.Y.2000) (Carter, J.). Moreover, "the law in the Second Circuit favors the liberal construction of Rule 23, and [therefore] courts may exercise broad discretion when they determine whether to certify a class." *See Pecere v. Empire Blue Cross Blue Shield*, 194 F.R.D. 66, 69 (E.D.N.Y.2000).

### A. Class I

Count I, brought on behalf of Class I, alleges that Principal's "on-line" review violates 29 C.F.R. § 2560.503–(1)(b)(1)(iii) because the on-line review is administered in a manner which "unduly inhibits or hampers the ... processing of claims."[8] Specifically,

---

**6.** In some instances a claim will concern diagnoses and procedures that are not easily categorized as covered or excluded charges. In such cases, the claims worker marks the claim with an "N" code to indicate that no automatic processing was possible, and forwards the claim for a more detailed level of review in Principal's claims review department. (Am. Cmplt. at 12) (discussing human review).

**7.** Crisp. Aff. refers to *The Affidavit of Naylene Crispin in Opposition to Plaintiffs' Motion for Class Certification*, executed on June 14, 2000. Doyle Aff. refers to the *Appendix and Affidavit of Ellen M. Doyle in Support of Plaintiffs' Motion for Certification of Three Classes and Memoran-

dum In Support Thereof, executed on May 23, 2000. Keller Aff. refers to the *Affidavit of Lisa M. Keller in Opposition to Plaintiffs' Motion for Class Certification*, executed on June 19, 2000. Moore Aff. refers to *Plaintiffs' Appendix, Volume II, and Affidavit of James A. Moore in Support of their Motion for Class Certification*, executed on July 6, 2000. Orel Decl. refers to the *Declaration of Stephen H. Orel in Opposition to Plaintiffs' Motion For Class Certification*, executed on June 16, 2000. Piot. Aff. refers to the *Affidavit of Gayle Ann Piotrowski*, executed on June 8, 2000.

**8.** In their pleading, plaintiffs incorrectly assert that Count I arises under 29 U.S.C. § 1102(a) & (b), provisions which are not intended to provide

plaintiffs allege that the claims workers at Principal that conduct the on-line review disregard the diagnoses listed in an insured's claim for benefits when the insured's doctor lists several diagnoses as a basis for a treatment, and instead only consider the first listed diagnosis, and this policy creates an unreasonable barrier to the insured's ability to access his health benefits. (Pl. Reply Mem. at 20). The class raising this claim is defined as:

> all plan participants and beneficiaries in ERISA covered medical benefit plans insured or administered by Principal throughout the United States who have been denied benefits for reasons related to the diagnosis submitted by their physician where a single diagnosis was input by Principal into its computer system even though the submitting physician submitted more than one diagnosis as the basis for payment of the claim.

■ Principal argues that Class I should not be certified because the class's definition is unworkable: it requires the court to inquire into the merits of the potential class members' claims in order to determine whether they are members of the class. (Def. Mem. at 12). *See also* 7A Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, Federal Practice and Procedure § 1759–61 (1986) (explaining that the court must determine whether a class's definition is workable prior to the Rule 23, F.R. Civ. P., analysis). As a general rule, a class's definition is workable if it is clear and precise, and "makes it administratively feasible for the court to de-termine whether a particular individual is a member." *See Rios v. Marshall,* 100 F.R.D. 395, 403 (S.D.N.Y.1983) (Gagliardi, J.). A class's definition will be rejected when it "requires addressing the central issue of liability in a case" and therefore the inquiry into whether a person is a class member "essentially require[s] a mini-hearing on the merits of each [plaintiff's] case." *See Forman v. Data Transfer, Inc.,* 164 F.R.D. 400, 403 (E.D.Pa.1995).

■ On review, defendant's objection must be rejected, as Class I's definition does not require adjudication of the central issue that will make defendant liable to the class, namely, whether the on-line review is administered in a way that "unduly inhibits or hampers ... the processing of claims" in violation of 29 C.F.R. § 2560.503–(1)(b)(1)(iii). Rather, the class's definition allows the court to identify class members based on fact determinations already made and contained in defendant's computer and microfilm files. Class I's members will be identified by: (1) running a search on defendant's computer system for the names of persons who were sent claim denial letters which stated that their claims were being denied because they concerned non-covered conditions;[9] (2) generating a list of the diagnoses that were assigned to these persons' claims during on-line review; and (3) comparing this list against defendant's microfilmed files to identify persons whose original claims listed multiple diagnoses. (Pl. Reply Mem. at 14). The resulting group of persons will be in-

---

a cause of action for unreasonable claims procedures. Section 1102(a) provides that "[e]very employee benefit plan shall be established and maintained pursuant to a written instrument," and section 1102(b) states that each plan must "specify the basis on which payments are to be made to and from the plan." Plaintiffs argue that defendant violated these provisions because Principal's on-line review does not allow its insureds to access the benefits they are entitled to under written plan documents. (Pl. Reply Mem. at 4). The court however, exercises its discretion under Rule 8(f), F.R. Civ. P., to correct plaintiff's pleading so that their allegation is raised under the ERISA provision designed to address unreasonable claims procedures: 29 C.F.R. § 2560.503–(1)(b)(iii). As explained above, the regulation prohibits an insurer from creating claims review procedures or administering its

claim review process in a manner which "unreasonably" "inhibits or hampers" claims. *See e.g., Porter v. Atchison, Topeka & Santa Fe Railway Co.,* 768 F.Supp. 571, 576 (N.D.Tx.1991) (recognizing that a claim against an insurer for a claims processing procedure which caused undue delay would arise under this section).

9. Contrary to defendant's assertion, it will not be necessary to interview all of Principal's claims examiners to identify persons whose claims were denied for "reasons related" to the diagnosis that was assigned to their claims during on-line review. (Def. Mem. at 12). Instead, Principal can generate a list of persons who were sent claim denial letters that indicated that their claims were being denied because they concerned non-covered conditions.

sureds who were denied insurance benefits for "reasons related to the diagnosis" that was assigned to their claims during on-line review, on the basis of one diagnosis, despite the fact that their claims originally contained multiple diagnoses.[10]

■ The court, however, agrees with defendant that the class's definition must refer to a specific and bounded time frame in order to be workable, and at present plaintiffs have failed to identify what period Class I's claims cover. (Def. Mem. at 12). The court, however, has the discretion to revise an overly broad class definition. *See Robidoux v. Celani*, 987 F.2d 931, 937 (2d Cir.1993). Since plaintiffs have only presented proof that they were injured by Principal's on-line review during the three years between 1995 and 1997, and therefore can only litigate the facts concerning how on-line review was conducted during this time period, the court amends Class I's definition so that its members include only those persons injured by on-line review during this three year period.[11] Once this limit is incorporated into the class's definition, the process of identifying Class I's members proves administratively feasible, as there are only a few facts to be considered in determining whether a person is a member of the class, only three resources need to be consulted for the determination, and much of the determination can be accomplished by a properly structured computer search of defendant's on-line files. Of course, if the size of the class poses significant manageability

problems, the court retains the discretion to further amend the class's definition to address these problems. *See* Rule 23(c), F.R. Civ. P.

■ Principal next asserts that the Selbys do not have standing to represent Class I because they have not suffered the injury raised on behalf of Class I's members. (Def. Mem. at 13). Indeed, "a predicate to [a plaintiff's] right to represent a class is his eligibility to sue in his own right;" therefore, the inquiry into a named plaintiff's standing precedes the Rule 23, F.R. Civ. P., analysis. *See Akerman v. Oryx Communications Inc.*, 609 F.Supp. 363, 376–77 (S.D.N.Y.1984) (Sofaer, J.). In order to have standing to raise a claim on behalf of a class, the plaintiff must "share the same injury and the same interest" as the class members and be a member of the class. *See East Texas Motor Freight System, Inc. v. Rodriguez*, 431 U.S. 395, 403, 97 S.Ct. 1891, 52 L.Ed.2d 453 (1977). The Selbys' pleading established that they suffered the injury raised on behalf of the class members. Specifically, their pleading showed that: (1) several of their doctors submitted claims for on-line review which listed multiple diagnoses as the bases for the treatments they offered; (2) when Principal's claims reviewers examined these claims, they altered each claim so that it listed a single diagnosis; (3) and these claims were subsequently denied. *See, e.g.,* (Rainbow) (Ex. 19) and (Rodman) (Ex. 20).[12] The Selbys' plead-

---

10. Defendant also argues that since Class I raises an ERISA claim, each class member would have to present proof that he had exhausted his administrative remedies before being allowed to join the class, and this inquiry would result in endless mini-trials on the merits of plaintiffs' claims. (Am. Cmplt. at 5–6). *See Crawford v. Marine Midland Bank, N.A.*, 1989 WL 29891, *3 (W.D.N.Y. March 27, 1989) (recognizing that the Second Circuit construes the ERISA statute to require that an insured exhaust his plan's administrative remedies before filing an ERISA suit). However, this requirement is not enforced in cases in which equitable concerns counsel against its enforcement. *Id.* Defendant did not present the court with any evidence that indicated that Principal maintains procedures which allow its insureds to challenge Principal's administrative procedures for processing claims, nor did defendant provide evidence showing that its insureds are aware of these procedures. Since there is a total absence of evidence on this issue,

the court will not require the class members to satisfy the exhaustion requirement, as it is unclear whether these procedures even exist. This decision can be reconsidered if defendant provides proof that such procedures exist and that plaintiffs failed to avail themselves of these procedures.

11. If plaintiffs want the class to litigate the facts concerning Principal's on-line review over a longer period of time they will need to identify additional named plaintiffs who were subjected to on-line review after 1997 or they would need a stipulation from Principal stating that its on-line review processes were the same in the years after plaintiffs were no longer enrolled in its insurance program.

12. Defendant contends that Ms. Selby's claims for the pregnancy maintenance treatments were not denied during on-line review, but rather

ing also established that they share the same interest as the class members: they seek an injunction requiring that their claims be re-processed and they seek restitution—that Principal be required to pay all claims that were wrongly denied as a consequence of on-line review.[13] In light of the above described evidence, the Selbys have established that they have sufficient standing to challenge defendant's on-line review policies on behalf of Class I's members.

Having addressed these prelimi-nary challenges, the court turns to Princi-pal's allegations that Class I fails to satisfy the Rule 23(a) requirements. A plaintiff sat-isfies the numerosity requirement under Rule 23(a)(1), F.R. Civ. P., by showing that the "class is so numerous that joinder of all members is 'impracticable.'" *See Pecere*, 194 F.R.D. at 70 (discussing Rule 23(a)(1), F.R. Civ. P.). Although plaintiffs bear the burden of proof on this issue, affidavits de-fendant submitted established that Class I satisfies the numerosity requirement. Spe-cifically, defendant submitted an affidavit from Lisa Keller, a senior actuarial associate at Principal, which established that during the first seven months of 1997 Principal pro-vided insurance for 1,240,940 persons under its group medical policies and covered 642,-011 persons under its self-insured plans. (Keller Aff. at 2). Also the affidavit defen-dant submitted from Naylene Crispin, an information technology analyst at Principal, established that on-line review was used for all of the claims that were submitted to Prin-cipal during 1995–1997, and established that a claim could be automatically denied during on-line review when the claim was submitted with a diagnosis code and a procedure code that were categorized as not covered under the insured's plan. (Crisp. Aff. at 2).

When read together, the affidavits that were submitted indicate that approximately two million people were insured under Prin-cipal's insurance programs during each year at issue in this claim, and all were subjected to on-line review. *See Medicare Beneficia-ries'*, 938 F.Supp. at 1140 (explaining that the court may estimate the number of persons in a class based on reasonable inferences it makes from the evidence submitted). Even if the court concluded that only 10% of Prin-cipal's insureds were affected by its practice of eliminating diagnoses from its insureds' claims during on-line review, since the plain-tiff class covers the years 1995–1997, there are potentially 600,000 persons nationwide who could be members of the class. This showing is more than sufficient to satisfy the numerosity requirement. *See Trief v. Dun & Bradstreet Corp.*, 144 F.R.D. 193, 198 (S.D.N.Y.1992) (Edelstein, J.) (stating that classes with more than 100 members satisfy the numerosity requirement).

Plaintiffs also have satisfied their burden under Rule 23(a)(2), as they have shown that a common question of law unites the class. *See In Sumitomo Copper Litiga-tion*, 194 F.R.D. 480, 482 (S.D.N.Y.2000) (Pollack, J.) (*"In Sumitomo"*). All the class members' claims will turn on one legal ques-tion: whether Principal's on-line review poli-cies, which allow it to consider only the first listed diagnosis in a claim that lists multiple diagnoses, violate ERISA's prohibition on claims review practices that "inhibit[ ] or hamper[ ]" the processing of claims. 29 C.F.R. § 2560.503–(1)(b)(iii). Additionally, plaintiffs have satisfied their burden under Rule 23(a)(3), by showing that their claims arise from the "same course of events" and

---

were analyzed and rejected in light of all of the information available in Ms. Selby's claim file. (Piot. Aff. at 2). This argument is moot for, even if defendant is correct, the Selbys' claims from Drs. Rainbow and Rodman establish that they have standing to represent persons whose claims were automatically denied during on-line review.

**13.** Defendant also argues that plaintiffs lacks standing to raise Count I for the class because plaintiffs are no longer enrolled in a Principal insurance plan, and therefore will not benefit from any injunctive relief that is secured. While

plaintiffs' claim under Count I has some injunc-tive elements, it is primarily a claim for money damages: they seek payment of all claims that were improperly denied during on-line review. *See Medicare Beneficiaries' Defense Fund v. Em-pire Blue Cross Blue Shield*, 938 F.Supp. at 1146. Since courts grant plaintiffs complaining of prior illegal conduct standing to sue for money dam-ages, *see, e.g., City of Los Angeles v. Lyons*, 461 U.S. 95, 111, 103 S.Ct. 1660, 75 L.Ed.2d 675 (1983), plaintiffs have no difficulty establishing that they have standing to raise Count I.

by showing "that each class member makes similar legal arguments to prove the defendant's liability." *In Sumitomo*, 194 F.R.D. at 482. The defendant's practice of eliminating diagnoses from claims during on-line review is a "pattern [of behavior] that commonly affects all the proposed class members." *Id.* The class members' common theory of liability is as follows: that defendant violated 29 C.F.R. § 2650.503–(1)(b)(1)(iii) when it willfully or negligently allowed material information to be omitted from its insureds' claims and then denied its insureds benefits with the knowledge that it did not have sufficient information to make a fair assessment of their claims.[14]

The final Rule 23(a), F.R. Civ. P., requirement, adequacy, has two parts: plaintiffs must show (1) that there is an absence of conflict and antagonistic interests between them and the class members, and (2) that

plaintiffs' counsel is qualified, experienced and capable. *See Koppel*, 191 F.R.D. at 367. In their pleading, the Selbys indicate that they seek a declaration that Principal's on-line review policies violate ERISA, an injunction requiring the defendant to reprocess their claims that were submitted to on-line review, and payment of all claims that were improperly denied as a result of on-line review. All of Class I's members share these interests.[15] Additionally plaintiffs' counsel is an established firm with substantial litigation experience, (Doyle Aff. Ex. 18), and no evidence has been presented that creates doubt regarding its ability to competently represent the class members. On these facts, the court finds that the adequacy requirement is satisfied.

Last, the court finds that Class I may be certified under Rule 23(b)(3), F.R. Civ. P.[16] A class will be certified under this

---

**14.** The court also rejects defendant's argument that Class I does not share any common issues of law or fact because the class members who were injured by on-line review are enrolled in different insurance plans with different coverage rules. When the named plaintiff in an ERISA class action challenges an insurer's practice that the insurer engages in with respect to all of its plans, the court will allow the plaintiff to represent persons in the insurer's other insurance plans. *See Sutton v. Medical Service Association of Pennsylvania*, 1993 WL 273429, *5 (E.D.Pa. July 20, 1993). *See* Crisp. Aff. at 2 (stating that on-line review is used for all claims that are submitted to Principal).

**15.** Defendant contends that the Selbys are not adequate representatives because they are subject to a unique defense: fraud. *See Pecere v. Empire Blue Cross Blue Shield*, 194 F.R.D. 66, 69 (E.D.N.Y.2000) (explaining that a named plaintiff will be found to be an inadequate representative in a class action when he "is subject to unique defenses that threaten to become the focus of the litigation"). In support of this assertion, defendant provided the court with documents showing that the Selbys exchanged correspondence with Dr. Sami's office which discussed how to characterize their claims, in order to increase the likelihood that their claims would be reimbursed. (Orel Decl. Exs. E & F). In the court's view, the Selbys' actions appear to be the kind of behavior many insureds engage in, as a way of ensuring that they receive the maximum amount of coverage available to them under their policies. If defendant considers such evidence to be proof of fraud, it is likely that it will bring similar charges against many class members, and therefore the Selbys will not be litigating a defense unique to their own claim.

**16.** Plaintiffs contend that Class I should be certified under Rule 23(b)(1) or 23(b)(2), F.R. Civ. P. (Pl. Mem. at 2). However, certification under Rule 23(b)(1)(A) is not appropriate because there is no risk of inconsistent adjudications in this case. Class I's members are persons with relatively small financial interests in their claims and they have insufficient resources to independently litigate protracted ERISA cases; therefore, defendant faces little risk that these persons will initiate separate actions and bind them to inconsistent standards of conduct. *See Eisen v. Carlisle & Jacquelin*, 391 F.2d 555, 563 (2d Cir. 1968), vacated on other grounds, 417 U.S. 156, 94 S.Ct. 2140, 40 L.Ed.2d 732 (1974).

Also Class I cannot be maintained under Rule 23(b)(1)(B) as an unfavorable disposition on one plaintiff's case—a finding that defendant's on-line review did not materially compromise one plaintiff's claim—would neither be dispositive of or compromise subsequent plaintiffs who alleged that the defendant's on-line review procedure compromised their claims. Indeed, in each case a plaintiff will present different information, identify different kinds of omissions and be able to show distinct ways these omissions affected his coverage under his particular plan.

Last, plaintiffs may not maintain Class I under Rule 23(b)(2). A claim that requests injunctive relief requiring a defendant insurer to reprocess formerly denied claims for benefits is primarily a claim for monetary relief, as the main purpose of this kind of claim is to secure payment for claims that plaintiffs allege were improperly denied. *See Medicare Beneficiaries' Defense Fund v. Empire Blue Cross Blue Shield*, 938 F.Supp. 1131, 1146 (E.D.N.Y.1996). It is well established that claims which primarily seek monetary remedies

section when common questions of law or fact predominate over any questions affecting only individual members, and when the plaintiff shows that a class action is superior to other available methods for fair and efficient adjudication of the class members' claims. *See Eisen v. Carlisle & Jacquelin*, 391 F.2d 555, 568 (2d Cir.1968), vacated on other grounds, 417 U.S. 156, 94 S.Ct. 2140, 40 L.Ed.2d 732 (1974) (discussing F.R. Civ. P. 23(b)(3)). The shared legal question in this case is whether Principal's practice of eliminating and disregarding the diagnoses in an insured's claim during on-line review violates the ERISA provision which prohibits an insurer from administering its claims review process in a manner that inhibits or hampers the processing of claims. This question predominates over the particular issues associated with each plaintiff's claim, namely: the specifics of the insured's policy, the illnesses his claims concerned, the potential amount of benefits each insured is due, and any defense of fraud that might be raised against a class member. All of these issues are relevant to the question of the amount of benefits each class member is due, and as explained below, the need for these inquiries may be obviated by the injunctive relief in this case.

 Last, plaintiffs showed that the class action is a superior method for fair and efficient adjudication of Class I's claim; if the court finds that Principal's on-line review violates ERISA's requirements for claims review procedures, this decision will trigger an injunction requiring the reprocessing of all the class members' claims, and would result in the payment of many improperly denied claims without further court action. Indeed, the injunctive relief requested will require that Principal review all the fact-specific information necessary to determine if claims were improperly denied, and make the initial determination as to whether plaintiffs are entitled to formerly denied benefits. After this determination is made, the court can review Principal's actions and also make any award of prejudgment interest that may be required.

cannot be maintained under 23(b)(2), F.R. Civ. P.

 The court's decision to certify this action under Rule 23(b)(3), F.R. Civ. P., requires that provisions be made for giving notice to absent class members. *See* F.R. Civ. P. 23(c)(2). The notice given must be "reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them [a]n opportunity to present their objections." *Eisen*, 391 F.2d at 568 (internal citations and quotations omitted). Because plaintiffs anticipated that the court would certify Class I under Rule 23(b)(1) or (b)(2), F.R. Civ. P., they have not provided any information regarding what kind of notice should be given to Class I's members. The court will not make this determination in the absence of a well developed fact record. *See id.* Therefore, the parties are directed to submit papers detailing the kind of notice they believe is best suited for Class I, and these submissions must specifically consider the factors required by Rule 23(c)(2), F.R. Civ. P.

### B. Class II

 Count II, raised on behalf of Class II, alleges that Principal violated ERISA, 29 U.S.C. § 1102 & 1022 by over-expansively interpreting the infertility treatment exclusion in its plans to prohibit reimbursement for treatments designed to assist women in maintaining their pregnancies. (Am. Class Cmplt. at 21). Similarly, Class II is defined as:

> all plan participants and beneficiaries in ERISA covered medical benefit plans insured or administered by Principal throughout the United States who were denied benefits for medically necessary care under its overbroad interpretation of its ambiguous exclusion "related to the restoration of fertility or promotion of conception."

Defendant argues that Class II should not be certified because any class which raises the claim that an insurer denied the class "medically necessary" treatment must fail, as inquiry into whether a treatment was "medically necessary" is claim specific and presents insufficient common issues for class-wide adjudication. (Def. Mem. at 25–26) *Id.*

(discussing Rule 23(a), F.R. Civ. P.). Defendant's contention is strongly supported by case law in this circuit and other jurisdictions. In *Pecere v. Empire Blue Cross Blue Shield,* a court in the Eastern District of New York declined to certify a class of persons denied "medically necessary" treatment for pain management on the grounds the class did not satisfy the numerosity, commonality and typicality requirements. *See Pecere,* 194 F.R.D. at 71. The court explained that there was no proof showing that a large number of persons had been denied treatment for the pain syndrome that was the basis for the named plaintiff's complaint, and there was no evidence which established that the pain syndrome plaintiff suffered from was typical of that suffered by other class members or representative of the conditions they suffered. *See id.*

Similarly in *Doe I v. Guardian Life Insurance Company of America,* 145 F.R.D. 466, 475–77 (N.D.Ill.1992), another district court refused to certify a class under Rule 23(b)(3) which raised an ERISA claim on behalf of all persons denied medically required treatment for manic depression under a "mental illness" exclusion in an insurer's policies. The court explained that individual issues about each patient's treatment and policy coverage threatened to overshadow any common legal issues raised by the class members, and therefore the class would not be certified. *See also, Paciello v. Unum Life Ins. Co. of Am.,* 188 F.R.D. 201, 204 (S.D.N.Y.1999) (McMahon, J.)(recognizing same in dicta).

Plaintiffs failed to address *Pecere* and *Doe I* in their submissions, and the evidence they presented reflected the same problems raised in these cases. Specifically, plaintiff failed to show that a large number of persons sought treatment to maintain their pregnancies and were denied reimbursement for this treatment under Principal's infertility treatment exclusion. Also plaintiffs' physician, Dr. Sami, listed a vast array of treatments that could be used to assist in maintaining a pregnancy. (*Sami. Dep.* at 262–26, 282–85)[17]. Therefore, plaintiffs would not be

able to establish that persons receiving pregnancy maintenance treatment received the same bundle of services, and thereby show that these cases present common fact scenarios. Relatedly, plaintiffs could not show that a common theory of liability could be advanced for the class as each bundle of services used to maintain a pregnancy would likely be treated differently under Principal's infertility treatment exclusion. Since plaintiffs cannot satisfy the Rule 23(a) requirements for Class II, the court declines to certify the class, and dismisses Count II from the class complaint. Plaintiffs may, however, proceed on this claim on an individual basis.

## C. Class III

In Count III, plaintiffs assert that Principal violated N.Y. Ins. L. § 3221(k)(6)(A) & (B) in three ways: (1) because it failed to program its computers to include codes that would sort out claims eligible for coverage under the terms of the statute which had been improperly rejected for payment under its infertility treatment exclusion (Am. Cmplt 17–18); (2) because it failed to publish information about the statute and the effect the statute had on Principal's infertility treatment exclusion in its plan information for insurance policies that were subject to the statute's conditions (Am. Cmplt.22–23); and (3) because Principal failed to provide insureds who were eligible under the statute with treatment for medically correctable conditions otherwise covered under their policies, and instead denied them treatment for conditions solely because these conditions were associated with infertility. Only the third claim is reflected in Class III's definition. Specifically, Class III is defined as:

> "all covered insureds whose group insurance polices were 'issued or delivered' in the State of New York, but who were denied hospital, surgical and/or medical coverage by Principal for correctable medical conditions because the conditions resulted in infertility even though the ser-

---

**17.** Sami Dep. refers to the Deposition of Dr. Sami David, M.D. conducted on May 8, 2000, and included as Orel Decl. Ex. A.

vices were otherwise covered by the policy."

Defendant's arguments focus on the third claim plaintiffs advance for Class III. In short, defendant argues that Class III should not be certified because the claim raised on behalf of the class requires inquiry into fact-specific issues on each potential class member's claims, and therefore the class raises insufficient common issues for class wide adjudication.

The court agrees. An inquiry into whether Principal denied a class of persons treatment for a "medically correctable" condition that resulted in infertility would require fact-intensive inquiry into issues about each class member's illnesses. Additionally, an inquiry into whether the "medically correctable" condition that the insured suffered from was "otherwise covered" under the insured's policy would require review of specific conditions, and whether they were covered under each insured's particular insurance plan. *See Pecere*, 194 F.R.D. at 71 (explaining that the specific and individualized facts regarding each class member's medical condition and course of treatment would prevent plaintiffs from satisfying the commonality requirement); *cf. Doe I*, 145 F.R.D. 466 (declining to certify a class of insureds because the different kinds of coverage under each class member's plan and the specifics of each class member's course of treatment made it unlikely that common issues of law and fact would predominate over the individual issues presented by each claim).

Given these precedents, the court declines to certify Class III and dismisses plaintiffs' third claim under this Count. Plaintiffs may, however, proceed on this claim on an individual basis.

█ The two additional claims that were raised on behalf of Class III could provide a basis for reforming the class's definition; however, these claims are not supported by sufficient authority to be allowed to survive. For example, plaintiffs offered no authority to support their claim that Principal is liable under N.Y. Ins. L. § 3221(k)(6)(A) & (B) for not changing the computer coding procedure it uses during on-line review to screen for claims that were required to be paid under the New York statute. This theory of liability is not supported by a plain reading of § 3221(k)(6)(A) & (B), and has not been recognized by any state court interpreting the statute.

Similarly, plaintiff's second claim under the statute—that Principal violated N.Y. Ins. L. § 3221(k)(6)(A) & (B) when it failed to provide its insureds with plan information about how the statute affected its infertility treatment exclusion—is based on the assumption that § 3221(k)(6)(A) & (B) imposes an affirmative duty on an insurer to make its insureds aware of how the statute might alter the insurer's interpretation of its policies. However, once again, the statute on its face does not support this reading, and plaintiffs have identified no authority which establishes this proposition.

Plaintiffs will argue that the absence of precedent weighs in their favor, as there is no case which establishes that its theories of liability are not actionable under the statute. However, federal courts are advised that "needless decisions of state law should be avoided both as a matter of comity and to promote justice between the parties, by procuring for them a surer-footed reading of the applicable law." *See Rovira v. AT & T*, 760 F.Supp. 376, 381 (S.D.N.Y.1991) (Patterson, J.). Based on this ground, the court will not amend Class III's definition to reflect plaintiffs' novel interpretations of N.Y. Ins. L. § 3221(k)(6)(A) & (B).

The court's judgment, however, should not be interpreted to mean that plaintiffs are entirely barred from pursuing their novel claims of liability under the statute, as this decision is best left to a state court. *See id.* at 380. Rather, the court merely declines to exercise pendant jurisdiction over plaintiffs' claims concerning these novel interpretations of the statute, and dismisses these allegations without prejudice, and plaintiffs may file claims in state court raising these theories of liability.

In summary, since none of the claims raised for Class III present issues appropriate for class-wide treatment, the court declines to certify Class III.

## D. Class IV

In Count IV plaintiffs allege that defendant's claim denial letters and its claims appeal procedures do not meet the minimum statutory requirements enumerated in ERISA, 29 U.S.C. § 1133(1) & (2), and Department of Labor regulations 29 C.F.R. § 2560.503–1(f) [18] & (h).[19] Although plaintiffs sought to bring Count IV on behalf of Class I, the court agrees with defendant that the claim is not sufficiently related to the claim raised for Class I to be maintained on this basis. (Def. Surreply Let. at 1) [20]. Stated simply, there will be insureds who have claims concerning Principal's allegedly confusing claim denial letters who have never been subjected to the practice challenged by Class I, Principal's policy of eliminating diagnoses during on-line review. The Selbys have suffered both injuries, and can represent persons with claims under either count. However, to ensure that the facts and legal issues for each count are clearly framed, the court will certify a separate class for each count. *See Wolfson v. Solomon,* 54 F.R.D. 584, 588 (S.D.N.Y.1972) (Gurfein, J.) (separating a class raising two distinct securities fraud claims into two independent classes and allowing plaintiff who suffered both injuries to serve as a representative for both classes).

Based on these findings, the court offers a proposed definition for Class IV based on Count IV, and considers whether the Selbys have presented sufficient information to satisfy the Rule 23 requisites for this class. *See* 2 Newberg on Class Actions § 7.37 (3d ed.1992). Plaintiffs may, if necessary, seek leave to amend the class's definition.

Class IV is defined as:

all plan participants and beneficiaries in ERISA covered medical benefit plans insured or administered by Principal throughout the United States who were sent computer generated Explanation of Benefits letters during 1997 stating "[w]e've excluded the non-covered charges under your plan" or "[t]hese conditions are not covered under your plan" and whose letters did not identify any specific plan exclusion or coverage area as the basis for the decision to deny the insured's claims.

The court's definition for Class IV reflects only one of the theories of liability plaintiffs raised under Count IV: plaintiffs' claim alleging that defendant's claim denial letters contain insufficient information to permit an insured to appeal a denied claim, in violation of 29 U.S.C. § 1133, and 29 C.F.R. § 2560.503–1(f). Plaintiffs' claim challenging the sufficiency of Principal's claims appeal procedures is dismissed from the class complaint, as this claim does not present any common questions of law or fact that could be adjudicated on a class wide basis. *See* Rule 23(a)(2), F.R. Civ. P.

Indeed, the evidence plaintiffs submitted in support of this claim was a series of fact-intensive letters discussing whether Ms. Selby's claims for her pregnancy maintenance treatments were required to be paid under New York state insurance law. A decision adjudicating whether Principal's communications with the Selbys constituted a "full and fair" appeal would not establish any general

---

**18.** 29 U.S.C. § 1133(1) provides that the administrator of an employee benefit plan must provide written notice when it denies a claim for benefits and that the written notice must contain "specific reasons for . . . [the] denial, written in a manner calculated to be understood by the participant." 29 C.F.R. 2560.503–1(f) echoes this provision, and further requires that the written notice include:(1) the reason that the claim was denied; (2)specific reference to the plan provisions that caused the claim to be denied; (3) a description of any additional information necessary to perfect the claim and an explanation of why the material is needed; and (4) a description of the steps needed to submit one's claim for further review.

**19.** 29 U.S.C. § 1133(2) provides that an employee benefit plan must "afford a reasonable opportunity to any participant whose claim for benefits has been denied for a full and fair review by the appropriate fiduciary of the decision denying the claim." Similar requirements are codified in 29 C.F.R. 2560.503–1(h); however, the regulation further requires that the review be completed within 60 days, that the decision made on review be reduced to writing and that the decision include the specific reasons the decision was made and specific references to the plan provisions on which the decision was based.

**20.** Def. Surreply Let. refers to defendant's letter to the court, dated July 17, 2000, submitted in surreply to plaintiffs' reply brief.

rule benefitting other persons who attempted to negotiate the appeals procedure. 29 U.S.C. § 1133(2).

Additionally, the proposed definition for Class IV includes a time limit. Since plaintiffs' pleading and supporting exhibits only demonstrate what Principal's claim denial letters stated during 1997, the court limited the class definition to cover only persons injured by these form letters during that period.

Once limited in this manner, Class IV meets the first three Rule 23(a), F.R. Civ. P. requirements. Specifically, Class IV meets the numerosity requirement as Principal's submissions indicate that it insured approximately two million people in 1997. (Keller Aff. at 2). Plaintiffs' pleading indicates that insureds automatically receive the challenged claim denial letters as a consequence of online processing, (Am. Cmplt. at 12–13), and no proof was offered to refute this finding. Therefore, even if the challenged letters were only sent to 10% of Principal's insureds, approximately 200,000 persons received these letters nationwide.

Defendant asserts that plaintiffs cannot satisfy the Rule 23(a) commonality and typicality requirements because courts conduct fact specific and claim specific inquiries when determining whether an insurer has violated 29 U.S.C. § 1133, and 29 C.F.R. § 2560.503–1(f), and therefore these kinds of claims present insufficient issues for class wide adjudication. (Def. Surreply Let. at 2). Indeed, when courts consider whether an insurer has violated these provisions they do not focus on a single letter, but rather look at all the communications the insurer has sent to the insured about the claim in order to determine whether the insured was provided with adequate notice as to why his claim was rejected. *See, e.g., Lidoshore v. Health Fund 917,* 994 F.Supp. 229, 236 (S.D.N.Y.1998) (Baer, J.) (examining the letters that an insurer sent to the insured over a three month period to-

gether to determine whether the insured was given sufficient information about why her claim had been denied).

Defendant's argument, however, defies logic, as it would prevent the court from adjudicating whether an insurer's form letters are so ambiguous and misleading that they violate the ERISA requirements, because the insurer would always be able to argue that his efforts to cure the defects in the letter negated any injury an insured suffered.

Indeed, in *Sutton v. Medical Service Association of Pennsylvania,* 1993 WL 273429, \*3–\*5 (E.D.Pa.1993), the court held that a class challenging an insurer's boilerplate claim denial letter could be certified. The *Sutton* case concerned an claim denial letter that allegedly buried information about other potential sources of coverage an insured had under his health benefit plan, at the same time that the letter announced that the costs of the claim had been partially denied. The court found that the class shared the following common question: "whether the procedure used by the 'defendant[ ]' [to provide notice of the denial of a claim] is misleading and/or inadequate, and therefore, under ERISA, must be enjoined." *Id.*

In this case, the class's members are similarly united by a clear cut legal question, namely, whether the generic messages in Principal's claim denial letters: "we have denied the non-covered charges" or some similar statement, when used without reference to the plan provisions at issue, fails to provide the minimum basic information required to appeal the denial of one's claim, as required by ERISA and the Department of Labor's guidelines. Resolution of this question does not require fact-specific inquiries into plaintiffs' reliance on the letters or the scope of their plans' coverage, as defendant's liability will be based solely upon whether the letters contain sufficient information to allow an insured to determine whether he can and should appeal his claim.[21]

---

**21.** Although the issues raised in *Paciello v. Unum Life Insurance Company of America,* 188 F.R.D. 201, 204 (S.D.N.Y.1999) (McMahon, J.) are similar to those raised here, the case is distinguishable. In *Paciello,* the court declined to certify a class of persons who had received claim denial

letters from a defendant insurer because the evidence before the court did not establish that the letter that the named plaintiff was sent was typical of those used by the insurer throughout the nation. In this case, however, the evidence before the court shows that the claim denial letters

The court however, agrees with defendant that the Selbys will not adequately represent Class IV's members because they lack standing to seek the injunctive relief they have requested for the class. (Def. Mem. at 19, 22). *See also, Medicare Benefi- ciaries'*, 938 F.Supp. at 1145 (discussing this issue as part of the adequacy requirement). The relief plaintiffs have requested for Class IV is an injunction prohibiting Principal from using the boilerplate claim denial letters referred to in Class IV's definition. However, since plaintiffs are no longer enrolled in a Principal insurance plan, they do not stand to benefit from this remedy, and therefore cannot seek this relief on behalf of the class members. This point bears further discussion.[22]

Article III provides that "[f]or a plaintiff to have standing to request injunctive or declaratory relief, the injury alleged must be capable of being redressed through injunctive relief at that moment." *Robidoux*, 987 F.2d at 937 (internal quotations and citations omitted). Therefore "[c]ourts have declined to find standing where, by the time the Complaint has been filed, the injury has already occurred and is unlikely to reoccur." *Marisol A. v. Giuliani*, 1998 WL 274472, *8 (S.D.N.Y. May 27, 1998) (Ward, J.).

The Selbys were no longer enrolled in a Principal insurance program after July 31, 1997, and the complaint in this action was filed more than a year later, on July 24, 1998. Plaintiffs have not presented any evidence indicating that the claim denial letters that they challenge under this claim concerned bills that were still pending when their complaint was filed in July, 1998. Plaintiffs also are unlikely to re-enroll in a Principal insurance plan, and therefore it is unlikely that they will receive the complained of claim denial letters in the future. Taken together, these facts establish that the Selbys stand to gain no benefit from the injunctive relief requested in this case, and therefore cannot seek this relief on behalf of the class members.

The court, however, recognizes that "the fact that a named plaintiff is no longer entitled to future relief is an impermissible basis on which to deny a motion to certify the class." *Medicare Beneficiaries'*, 938 F.Supp. at 1145 (collecting cases). In such circumstances, the court may allow plaintiffs to identify a new named plaintiff with sufficient standing to seek injunctive relief on behalf of the class members. *See* 1 Newberg on Class Actions § 3.35. The court, therefore, in this case, declines to certify Class IV, but grants plaintiffs thirty days in which to identify a new named plaintiff for the class. *Cf. Kenavan v. Empire Blue Cross Blue Shield*, 1996 WL 14446, *4 (S.D.N.Y. January 16, 1996) (Wood, J.) (dismissing class's allegations without prejudice and granting leave to recertify the class if a new named plaintiff was presented within thirty days). If plaintiffs fail to identify a new named plaintiff, Count IV will be dismissed from the class complaint.

### III. CONCLUSION

In summary, the court certifies Class I under Rule 23(b)(3), F.R. Civ. P., and directs plaintiffs and defendant to submit papers discussing the notice required for absent class members. Also Class IV may be certified upon plaintiffs' motion as long as the plaintiffs identify a proper named plaintiff with standing to seek injunctive relief. The

are computer generated standard forms, and plaintiffs' pleading indicates that they are generated as a byproduct of the on-line review system defendant uses to process all United States claims. Based on these facts, the court concludes that a large number of defendant's insureds nationwide have received the letters at issue in this case, and any decision made as to the propriety of these letters can be given class wide effect.

**22.** If an appropriate named plaintiff is identified, Class IV may be certified under Rule 23(b)(2), F.R. Civ. P. Defendant has acted on grounds generally applicable to the class, as the claim denial letters at issue were automatically generated and sent to insureds whenever Principal's claims examiners determined that their claims should be denied. Furthermore, final injunctive and declaratory relief is needed to resolve the class members' claims. The only way the class members' injury can be addressed is if the court issues a mandatory injunction requiring that Principal reissue letters for the class members which specifically explain the reasons that the class members' claims were denied.

court declines, however, to certify Classes II and III, but plaintiffs may proceed on Counts II and III on an individual basis. Furthermore, in their actions before this court, plaintiffs are limited on Counts II & III to the theories of liability sanctioned earlier in this opinion.

**IT IS SO ORDERED.**