**Elizabeth A. PECERE, and Linda Prince, on behalf of themselves and all others similarly situated, Plaintiffs,**

**v.**

**EMPIRE BLUE CROSS AND BLUE SHIELD, Defendant.**

No. 99–CV–3610.

United States District Court, E.D. New York.

May 31, 2000.

Kenneth F. McCallion, Goodkind Labaton Rudoff & Sucharow LLP.

New York City, Randy M. Mastro, Gibson, Dunn & Crutcher LLP, New York City.

### MEMORANDUM AND ORDER
GLASSER, District Judge.

In this action, plaintiffs Elizabeth Pecere ("Pecere") and Linda Prince ("Prince") allege that defendant Empire Blue Cross & Blue Shield ("Empire") has a specific policy of routinely denying treatments for pain alleviation and pain management in an arbitrary and capricious manner and without regard to medical necessity. Amended Class Action Complaint ("Compl.") ¶¶ 27, 28, 29. Plaintiffs now move pursuant to Rule 23 of the

Federal Rules of Civil Procedure for an order that this case be maintained as a class action on behalf of all persons "who have been unlawfully denied medical benefits relating to pain management or alleviation" by Empire. Compl. ¶ 20. The purported class is defined as including all such individuals who have exhausted administrative remedies and whose appeals have been denied by Empire within the statute of limitations applicable to this action under the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. § 1001 et seq., and pursuant to 29 U.S.C. § 1132(a)(1)(B). *Id.*

## BACKGROUND

Under two separate policies of medical insurance, the defendant is required to cover the "medically necessary" expenses of the plaintiffs Pecere and Prince. Compl. ¶¶ 1, 6. Pecere injured her back in June 1993 while lifting some heavy boxes of files at her place of work. As a result, she experiences lower back pain that radiates to her legs, and has been diagnosed as suffering from fibromyalgia and other degenerative medical conditions. Compl. ¶ 2. Pecere has been unemployed since the injury occurred.

To relieve her pain, physicians at the Pain Alleviation Center in Jericho, New York prescribed a treatment program that included trigger point injections. The Complaint alleges that since her treatment began in August 1996, Pecere has made steady progress. Compl. ¶¶ 3, 4.

The Complaint alleges that starting in April 1995 and continuing thereafter, Prince has suffered from a herniated disc which causes her significant pain. It is alleged that she has been unable to work steadily and her condition has required surgery and steroid injections. Compl. ¶ 7. To obtain relief from the pain caused by her condition, plaintiff sought treatment at the Pain Alleviation Center from Dr. Paul J. Sorrell III ("Dr. Sorrell"). The treatment included physical therapy, massage and trigger point injections.

Between August 16, 1996, and July 14, 1999 (the date that this case was filed), plaintiffs Pecere and Prince submitted approximately 150 claims to Empire for treatments administered to them by doctors at the Center. Labianca ¶ 8. Pecere sought a total of approximately $69,375 in payments from Empire for treatments that she claims to have received at the Center. *Id.* ¶ 9. Empire made payments to Pecere for $18,202 worth of these claims, over a period of approximately 2 years. *Id.* Empire made its last payment to Pecere on or about October 26, 1998, and denied payment for claims relating to physical therapy at the Center after that date. *Id.* Prince sought a total of $11,610 in payment for similar treatments allegedly received at the Center and has received payment of approximately $665 from Empire for that therapy. *Id.* ¶ 10.

Empire's policy regarding the provision of reimbursement benefits for pain management is set out in its "Pain Management Guidelines." McCallion Aff.Ex. A. It states that "[m]ultidisciplinary in-patient Pain Management 'programs' are *not* covered under our hospital contracts. Services may be allowed based on individual coverage." *Id.* at 1. The Guidelines also provide: "[o]ut-patient pain management 'programs'—We do *not* recognize a global fee or make a global payment on surgical/medical contracts. Eligible services are reimbursed according to medical necessity and contractual coverage." Plaintiffs argue that these provisions, along with several others, indicate that Empire considers as medically necessary only those pain management/alleviation treatments that are directly connected to or arising out of surgical procedures. Pl.Mem. 2–4. Plaintiffs view these provisions as evidence of an arbitrary and capricious policy of denial for payments of medically necessary pain management programs. Pl.Mem. at 2.

According to plaintiffs, "even if ... non-surgical pain alleviation treatments were medically necessary and/or prescribed by a licensed physician, Empire would simply have no procedures, guidelines or even administrative coding system by which to process such claims for reimbursement and determine whether or not they were 'medically necessary' treatments." Pl.Mem. 4.

Empire denies that it acts arbitrarily when deciding whether to cover a particular course of pain therapy. Def.Mem. at 14 n. 11. At

oral argument, in response to the Court's inquiry concerning plaintiffs' assertion that benefits were denied without explanation, defendant advised that its medical experts had determined that treatment was no longer medically necessary. Moreover, Empire argues that plaintiffs' doctors engage in questionable treatments and billing practices.

According to Empire, at least two of the doctors at the Pain Alleviation Center who were treating plaintiffs, Dr. Paul J. Sorrell and Dr. Richard M. Linchitz, have been the subject of "pre-payment review flags." Labianca Aff. ¶¶ 2, 4. This means that, because these Pain Alleviation Center's doctors were found by Empire to have questionable billing practices, Empire's Professional Services Review Department reviews each and every claim submitted by them, together with the actual medical records of the patient. *Id.* ¶ 3. According to Empire, in 1999 its Fraud Investigation and Detection Division began a formal fraud investigation into the Pain Alleviation Center and its doctors. Labianca Aff. ¶ 6. Both Dr. Sorrell and Dr. Linchitz claim that they did not know of these actions allegedly taken by Empire and that such measures are simply a retaliation for their association with plaintiffs' lawsuit. Linchitz Aff. ¶¶ 4–7; Sorrell Aff. ¶¶ 4–6.

Plaintiffs Pecere, Prince, and Nancy Shanlin commenced this action on July 14, 1999. On or about August 26, 1999, plaintiffs filed an amended complaint withdrawing plaintiff Nancy Shanlin and on March 31, 2000, plaintiffs filed this motion for class certification.

## DISCUSSION

I. *The Standard for Class Certification*

Rule 23 of the Federal Rules of Civil Procedure governs class certification. It provides in part:

(a) **Prerequisites to a Class Action.** One or more members of a class may sue or be sued as representative parties on behalf of all only if (1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the class, (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and (4) the representative parties will fairly and adequately protect the interests of the class.

Additionally, a potential class action must qualify under one of the alternatives set forth in Rule 23(b). Plaintiffs here rely on Rule 23(b)(3), under which a class action may be maintained if "the court finds that the questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy."

Although a class certification motion "may involve some considerations related to the factual and legal issues that comprise the plaintiff's cause of action," *D'Alauro v. GC Servs. Ltd. Partnership,* 168 F.R.D. 451, 454 (E.D.N.Y.1996), a court considering a motion for class certification must accept the allegations in the complaint as true and should not conduct a preliminary inquiry into the merits of the action. *See Eisen v. Carlisle & Jacquelin,* 417 U.S. 156, 177, 94 S.Ct. 2140, 2152–53, 40 L.Ed.2d 732 (1974) (Rule 23 does not "give a court authority to conduct a preliminary inquiry into the merits of a suit to determine whether it may be maintained as a class action"). A court should only grant a motion to certify a proposed class if it "is satisfied, after a rigorous analysis, that the prerequisites of Rule 23(a) have been satisfied." *Gen. Tel. Co. of the Southwest v. Falcon,* 457 U.S. 147, 161, 102 S.Ct. 2364, 72 L.Ed.2d 740 (1982). However, the law in the Second Circuit favors the liberal construction of Rule 23 and courts may exercise broad discretion when they determine whether to certify a class. *See D'Alauro,* 168 F.R.D. at 454–55; *Gary Plastic Packaging Corp. v. Merrill Lynch,* 903 F.2d 176, 179 (2d Cir.1990), *cert. denied,* 498 U.S. 1025, 111 S.Ct. 675, 112 L.Ed.2d 667 (1991) (*citing Green v. Wolf Corp.,* 406 F.2d 291, 298 (2d Cir.1968), *cert. denied,* 395 U.S. 977, 89 S.Ct. 2131, 23 L.Ed.2d 766 (1969)).

Plaintiffs bear the burden of establishing each requirement under Rule 23 for class certification, and their failure to meet

any one of Rule 23's requirements destroys the alleged class action. *See Ansari v. New York Univ.*, 179 F.R.D. 112, 114 (S.D.N.Y. 1998); *Green v. Wolf Corp.*, 406 F.2d at 298. "Certification ... is dependent on [plaintiff's] proof that each of the requirements of Rule 23(a) ... has been met." *Lloyd v. Industrial Bio-Test Lab., Inc.*, 454 F.Supp. 807, 811–12 (S.D.N.Y.1978). "In attempting to meet these requirements plaintiffs may not rely solely on the allegations of the complaint, but must provide information sufficient for the court to make a reasonable judgment." *Colburn v. Roto-Rooter Corp.*, 78 F.R.D. 679, 681 (N.D.Cal.1978); *see also Feinstein v. Firestone Tire and Rubber Co.*, 535 F.Supp. 595, 601 (S.D.N.Y.1982).

### A. Numerosity

 For a court to certify a class, Rule 23(a) requires a finding that the numerosity of injured persons makes joinder of all class members "impracticable." *Robidoux v. Celani*, 987 F.2d 931, 935 (2d Cir.1993). Impracticable does not mean impossible, but simply difficult or inconvenient. *See id.; Primavera Familienstiftung v. Askin*, 178 F.R.D. 405, 409 (S.D.N.Y.1998); 7A Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, Federal Practice and Procedure § 1762 (2d ed.1986). "Moreover, plaintiffs need not provide a precise quantification of their class, since a court may make 'common sense assumptions' to support a finding of numerosity." *LeGrand v. New York City Transit Auth.*, No. 95–CV–0333, 1999 WL 342286, *3 (E.D.N.Y. May 26, 1999) *Deflumer v. Overton*, 176 F.R.D. 55, 58 (N.D.N.Y.1997); *see also German v. Federal Home Loan Mortgage Corp.*, 885 F.Supp. 537, 552 (S.D.N.Y.1995). Nevertheless, "[a]s the bearers of the burden to show joinder is impracticable, [p]laintiffs must show some evidence of or reasonably estimate the number of class members." *LeGrand*, 1999 WL 342286, *3.

Plaintiffs broadly define the putative class as those "who have been unlawfully denied medical benefits relating to pain management or alleviation in violation of to [sic] 29 U.S.C. § 1132(a)(1)(B) and in violation of the provisions of their group health plan with Defendant Empire." Am.Compl. ¶ 20. Yet, plaintiffs have failed to proffer any evidence to permit a reasonable estimate of the number of persons who fit within the proposed class. All plaintiffs allege in their complaint regarding numerosity is the bald assertion that the "class represented by plaintiffs is so numerous that joinder of all members is impracticable," and that the "precise number of [Empire's] policyholders who are potential plaintiffs is not presently known with certainty, but it is likely that the class exceeds several hundred persons." Am.Compl. ¶ 21.[1] Affidavits of plaintiffs' doctors, submitted along with plaintiffs' reply brief, simply allege that their estimate of the number of Empire policyholders in New York who have been unlawfully denied pain treatment coverage numbers in the hundreds. Sorrell Aff. ¶ 5; Linchitz Aff. ¶ 8. No information is provided as to the methodology used to reach this conclusion, and therefore, it will not suffice to establish a reasonable estimate of the number of persons who fit within the proposed class.

 Furthermore, in determining whether a proposed class is so numerous that joinder of all members is impracticable, courts examine the following factors: (1) judicial economy, (2) the geographic dispersion of class members, (3) class members' financial resources, (4) the ability of claimants to institute individual lawsuits, (5) knowledge of the names and existence of the potential class members, and (6) requests for prospective injunctive relief that would involve future class members. *See LeGrand*, 1999 WL 342286, at *4 (*citing Robidoux*, 987 F.2d at 935). Plaintiffs have failed to address these

---

1. Plaintiffs' counsel states in his affidavit that, upon information and belief, "at one medical center alone—the Pain Alleviation Center in Jericho, New York—he [sic] two named plaintiffs are merely the 'tip of the iceberg' of those who have been denied coverage," and that "literally hundreds of policy holders have wrongfully been denied coverage for these medically appropriate and necessary pain treatment programs." These vague hearsay statements are insufficient to satisfy the numerosity requirement. McCallion Aff. ¶ 3. *See Mechigian v. Art Capital Corp.*, 612 F.Supp. 1421, 1432 (S.D.N.Y.) (denying class certification motion and stating that speculative assertion in counsel's affidavit was insufficient to meet the numerosity requirement).

issues with respect to the class that they purport to represent.[2]

■ Just as there is a "common sense assumption" to support a finding of numerosity, it should follow that the Court may make a "common sense assumption" against numerosity. In that regard, common sense would dictate that patients are not fungible and that the medical necessity of pain alleviation is not universal. The conclusion must be, therefore, that any assertion that the "class represented by plaintiffs is so numerous that joinder of all is impracticable" is sheer sophistry.

### B. *Commonality and Typicality*

■ If common sense would dictate that patients are not fungible and that the medical necessity of pain alleviation is not universal and must be determined by an individual professional evaluation, to assert that typicality and commonality are satisfied would similarly be sheer sophistry.

> [T]ypicality, a matter closely related to commonality, is satisfied when each class member's claim arises from the same course of events and each class member makes similar legal arguments to prove the defendants' liability ... While the commonality inquiry establishes the existence of a certifiable class, the typicality inquiry focuses on whether the claims of the putative class representatives are typical of the class sharing common questions.

*In re Frontier Ins. Group. Inc. Securities Litigation,* 172 F.R.D. 31, 40 (E.D.N.Y.1997).

■ The general purpose of both the commonality and typicality requirements of Rule 23(a) is to ensure that maintenance of a class action is "economical and whether the named plaintiff's claim and the class claims are so interrelated that the interests of the class members will be fairly and adequately protected in their absence." *General Tel.,*

457 U.S. at 157 n. 13, 102 S.Ct. 2364; *3004 Albany Crescent Tenants'. Ass'n v. City of New York,* No. 95 Civ. 10662, 1999 WL 1067891, at .*3 (S.D.N.Y. Nov.24, 1999). "Those requirements therefore also tend to merge with the adequacy-of-representation requirement, although the latter requirement also raises concerns about the competency of class counsel and conflicts of interest." *General Tel.,* 457 U.S. at 157 n. 13, 102 S.Ct. 2364.

■ In this case, plaintiffs' claims are not common to or typical of those of the putative class, and questions of law or fact common to the members of the class do not predominate over any questions affecting only the named plaintiffs. The class that plaintiffs purportedly represent includes everyone who has been unlawfully denied benefits for pain treatment by Empire in violation of the provisions of their group health plan. Am. Compl. ¶ 20. Plaintiffs do not specify why, when, where or how the coverage of the class was denied.

This case is ill-suited for class status because plaintiffs' claims hinge on whether or not the treatment for each of their individual conditions was "medically necessary." Compare, e.g., Am.Compl. ¶ 5 (seeking payment for Pecere's trigger point injections) and Am. Compl. ¶ 8 (seeking payment for Prince's ice packs and massages). Thus, plaintiffs' claims require a "highly individualistic determination," militating against class certification. *Klein v. Empire Blue Cross and Blue Shield,* No. 93 Civ. 5187, 1998 WL 336633, at *4 (S.D.N.Y. June 23, 1998) (denying class certification because, inter alia, whether treatment was experimental as to a specific plaintiff's medical condition was not common to class members and would require "highly individualistic determination"). This is especially so because some of plaintiffs' claims for pain treatment administered by the Pain Alleviation Center were in fact paid.

---

**2.** In plaintiffs' reply brief they argue that "[m]any of the instant Class members are physically disabled and living on fixed incomes, making them unlikely to bring their own individual claims for relief," and "members of the Class are geographically dispersed throughout the New York area which would also make joinder impracticable." Pl. Reply. Mem. at 7–8. However plaintiffs have provided no evidentiary support by way of affidavit for these assertions.

Although plaintiffs claim that the defendant arbitrarily and capriciously denied payment for medically necessary treatment for pain, that assertion is belied by the undisputed fact that Pecere and Prince did receive payments from Empire for more than $18,000 worth of physical therapy. Moreover, the purported class members have differing levels of contractual coverage. Thus, plaintiffs' claims are not typical of, or common to, those of members of the class who were treated by other physicians, have different contractual coverage, or were denied all benefits.

### C. Adequacy of Representation

■ Plaintiffs are also unable to satisfy their burden regarding the adequacy of their representation under Rule 23(a)(4). A court should not certify a class representative who "is subject to unique defenses which threaten to become the focus of the litigation." *Gary Plastic Packaging v. Merrill Lynch*, 903 F.2d 176, 180 (2d Cir.1990), *cert. denied*, 498 U.S. 1025, 111 S.Ct. 675, 112 L.Ed.2d 667 (1991). Plaintiffs in this case are subject to such defenses.

■ Two of their treating physicians, Drs. Richard M. Linchitz and Paul J. Sorrell III, have been under investigation by Empire for fraudulent billing practices. Absent class members would suffer if plaintiffs were their representatives because plaintiffs' conduct of the case would be preoccupied with defenses unique to them. *Id.* (noting that unique defenses go to either the typicality or adequacy of representation requirements).

### D. Superiority Requirement

■ Rule 23(b)(3) requires plaintiffs to demonstrate "that a class action is superior to other available methods for the fair and efficient adjudication of the controversy." Fed.R.Civ.P. 23(b)(3). Plaintiffs cannot show that a class action is the superior means of adjudicating this case, in which their own personal dispute with Empire is at issue. Furthermore, where, as here, individual fac-

tual issues—such as whether certain treatments were "medically necessary"—predominate over common issues of fact, a class action is "not a superior method for fair and efficient adjudication." *Kaczmarek v. International Bus. Machs. Corp.*, 186 F.R.D. 307, 312 (S.D.N.Y.1999).

### CONCLUSION

This case is clearly not appropriate for class action certification. Rather, plaintiffs Pecere and Prince have personal disputes with Empire, their health insurance carrier, over the amount of reimbursement that they may receive for pain therapy administered by one particular medical establishment—the Pain Alleviation Center in Jericho, New York, which the defendant has determined to be medically unnecessary.

Plaintiffs have failed to meet their burden under Rule 23. Their motion is founded on affidavits from persons other than plaintiffs, which provide little details of the purported class, and almost no information concerning numerosity, commonality, typicality, adequacy, predominance, or superiority. *See Sheehan v. Purolator, Inc.*, 103 F.R.D. 641, 648 (E.D.N.Y.1984) (denying class certification motion, because, *inter alia*, plaintiffs seeking class certification failed to submit affidavits from purported class members or other evidence that established the existence of an aggrieved class), *aff'd*, 839 F.2d 99 (2d Cir. 1988). For all of the foregoing reasons, this Court denies plaintiffs' motion for class certification.

SO ORDERED.