Anthony DODGE, Peter A. Machado and Joseph Petriello, individually and on behalf of all others similarly situated, Plaintiffs,

v.

COUNTY OF ORANGE and Sheriff H. Frank Bigger, in his individual and official capacity, Defendants.

No. 02 Civ. 769(CM).

United States District Court, S.D. New York.

May 29, 2002.

James Edward Monroe, Dupee & Dupee, P.C., Goshen, NY, for plaintiffs.

Christina Sanabria, County Atty., County of Orange, Goshen, NY, James M. Fedorchak, Gellert & Cutler, P.C., Poughkeepsie, NY, for defendants.

MEMORANDUM AND ORDER GRANTING PLAINTIFFS' REQUEST FOR A PRELIMINARY INJUNCTION HEARING AND ORDERING A HEARING REGARDING RULE 23(B)(2) CERTIFICATION

MCMAHON, District Judge.

Plaintiffs Anthony Dodge, Peter A. Machado and Joseph Petriello bring this action

under 42 U.S.C. § 1983. They seek to represent a class of pre-trial detainees that were strip searched at the Orange County Correctional Facility ("OCCF") between January 31, 1999 and January 21, 2002, pursuant to OCCF's uniform strip search policy.

As I stated in *Murcia v. County of Orange,* 185 F.Supp.2d 290 (S.D.N.Y.2002), the question of whether Orange County has a policy of strip searching every inmate who arrives at OCCF is not new to the Court. This case was filed as a related case to *Murcia v. County of Orange,* 00 Civ. 1325 and *Lee v. Perez,* 00 Civ. 2749. *Lee v. Perez* went to trial before me in June, 2001. In November, 2001, I granted Lee a new trial against a Corrections Officer who allegedly conducted a strip search of Lee, without reasonable suspicion to do so, at the OCCF in November, 1998. *See Lee v. Perez,* 175 F.Supp.2d 673, 681 (S.D.N.Y.2001). Following my decision to grant Lee a new trial on that issue, *Lee v. Perez* settled.

I also note that I recently decided a class certification motion in a case with facts quite similar to the case at hand. In *Maneely v. City of Newburgh,* No. 01 CIV 2600(CM), 2002 WL 999317, at *6 (S.D.N.Y. May 16, 2002), I certified a partial class as to the issue of whether the City of Newburgh maintained a policy of strip searching all pre-arraignment prisoners, with or without having reasonable suspicion to believe that these persons were carrying or concealing weapons or contraband. While there are some factual differences between the cases, both parties make essentially the same arguments here as those raised in *Maneely.* (*see* Pl's Reply to Def's Opp. at 1, n. 1.) For the sake of a complete record, I reiterate my conclusions and the reasons therefore.

## STATEMENT OF FACTS

Plaintiffs claim that since 1991, defendants have enforced a policy requiring the systematic strip search of all pre-trial detainees placed in the custody of the Orange County Sheriff's Office. According to plaintiffs, this policy called for the strip search of all individuals who arrived at the jail regardless of the crime with which they were charged. Each detainee was forced to strip naked,

bend over and/or squat, lift his/her genitals and spread the cheeks of his/her buttocks so that Orange County Correctional Officers could complete a visual search of his/her body.

Plaintiffs note that, in *Lee v. Perez,* Sheriff Bigger testified that all inmates were strip searched upon entering the Orange County Jail. Officer Kehlenback "denied that the crime charged or the circumstances of the arrest played a role in his determination to strip-search Lee or anyone else." *Lee,* 175 F.Supp.2d at 681. On June 5, 2001, Officer Kehlenback testified that "there had been no changes in the policy regarding the search[ing] of new arrivals at OCCF since he started working at the jail some twelve years ago...." *Id.,* at 678.

Anthony Dodge alleges that he was strip searched on each of his approximately twelve admissions to the Jail from April 28, 1999 through January 29, 2002. He asserts that all of his arrests were for either misdemeanor offenses or violations, and therefore, there was no reasonable suspicion to search him on any of those occasions. (Compl. ¶ 8; Decl. of Anthony Dodge in Supp. of Pl's Mot. for Class Certification.)

Peter A. Machado alleges that he was strip searched upon admission to the Jail on August 17, 1999. He contends that he was arrested for a misdemeanor offense and that there was no reasonable suspicion to warrant his strip search. (Compl. ¶ 9.)

Joseph M. Petriello alleges that he was arrested on December 2, 2001 and charged with driving while intoxicated (a Class "E" felony) together with several vehicle and traffic violations. He alleges that he was strip searched, without reasonable suspicion to justify the search, upon being placed in the custody of the Orange County Sheriff's Office. (Compl. ¶ 10.)

Plaintiffs move for class certification under Federal Rules of Civil Procedure 23(a), (b)(2) and (b)(3). Plaintiffs also seek a preliminary injunction enjoining defendants from enforcing their strip search policy.

Defendants respond that injunctive relief would be moot since in August of 2001, the Orange County Sheriff's Office implemented

a new policy of body searches that comports with the law. Defendants claim that this policy replaced prior policies adopted in 1990 and revised in 1991 and 1992. Defendants assert that this new policy has been enforced and uniformly applied by all corrections officers since its inception, noting that of the four plaintiffs initially proffered as class representatives, only two were allegedly strip searched after the institution of the Jail's August 1, 2001 body search policy. In support of their claim, they have submitted the declaration of Captain Joseph Ryan of the Orange County Sheriff's Office and the affidavit of Christina M. Sanabria, Assistant County Attorney in the office of the County Attorney for Orange County.

Plaintiffs reply to Defendants' opposition papers with the declaration of another potential class representative, Gordon Barnum, Jr.[1] Barnum claims that he was strip searched on February 4, 2002 by Orange County Corrections Officers after being arrested and charged with one count of petit larceny (a Class "A" misdemeanor).

Plaintiffs also have submitted the affidavit of Wallace Babcock.[2] On December 7, 2001, Mr. Babcock turned himself over to Judge Andrew P. Bivona of the Orange County Family Court in response to an outstanding warrant for his arrest for failing to make child support payments. The Judge set his bail at $10,000.00 and remanded Mr. Babcock to the custody of the Orange County Sheriff's Office until a willfulness hearing could be scheduled. Upon arriving at the Orange County Jail on that same day, Mr. Babcock was strip searched. He claims that when he was at the facility, he observed that all of the newly arriving inmates were also subjected to the same strip search. According to Mr. Babcock, several years prior to this detention, he had been convicted of breaking and entering, "bad check," and disorderly conduct. He had also recently been charged with shooting two elks out of a designated zone in Colorado.

Plaintiffs request that the Court hold a hearing to determine whether defendants'

written policy has actually replaced the old policy, given that plaintiffs have offered declarations from those who claim to have been illegally strip searched after August, 2001. Plaintiffs ask the Court for permission to subpoena deputies and recent inmates to give testimony regarding whether defendants make individualized determinations of reasonable suspicion before conducting strip searches.

## DISCUSSION

### I. Standing and Mootness of Injunctive Relief

Defendants argue that plaintiffs are not entitled to injunctive relief because there is no likelihood that the named plaintiffs or any other potential class members will be subjected to this same conduct in the future.

In order to meet the standing requirement of Article III of the United States Constitution, a plaintiff must demonstrate an injury in fact, causation of that injury, and a likelihood that the requested relief will redress that injury. *Steel Co. v. Citizens for a Better Environment*, 523 U.S. 83, 103, 118 S.Ct. 1003, 140 L.Ed.2d 210 (1998) (citing *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560–61, 112 S.Ct. 2130, 119 L.Ed.2d 351 (1992)). A plaintiff seeking injunctive or declaratory relief cannot rely on past injury to satisfy the injury in fact requirement, but must show a likelihood that he or she will be injured in the future. *City of Los Angeles v. Lyons*, 461 U.S. 95, 105–06, 103 S.Ct. 1660, 75 L.Ed.2d 675 (1983). "Past exposure to illegal conduct does not in itself show a present case or controversy regarding injunctive relief ... if unaccompanied by any continuing, present adverse effects." *Steel Co.*, 523 U.S. at 108, 118 S.Ct. 1003.

Defendants rely on *Lyons*, 461 U.S. at 105–06, 103 S.Ct. 1660. In *Lyons*, the plaintiff sought declaratory and injunctive relief against the Los Angeles police, claiming he had been illegally choked by Los Angeles police officers. *Id.* at 98, 103 S.Ct. 1660.

---

1. Defendants argue that this proffer of an additional proposed class representative was belated and improper.

2. Defendants also oppose the addition of this potential class representative.

Although he alleged that the Los Angeles police routinely applied choke holds and that he faced a threat of being illegally choked again in the future, the Supreme Court held that plaintiff's allegations of future injury were too speculative and dismissed the case for lack of standing. *Id.* at 109–111, 103 S.Ct. 1660. The Court stated that in order to allege standing, Lyons would need to establish "(1) that all police officers in Los Angeles always choke any citizen with whom they happen to have an encounter, . . . or, (2) that the City ordered or authorized police officers to act in such manner." *Id.*

Following the standard set forth in *Lyons,* the Second Circuit has held that a plaintiff may have standing to seek injunctive relief against a police department if the alleged improper actions were conducted pursuant to a uniform practice or official policy. In *Deshawn v. Safir,* 156 F.3d 340, 343 (2d Cir.1998), the Second Circuit held that a group of plaintiffs had standing to sue for equitable relief where there was an officially-endorsed policy of submitting arrestees to coercive interrogations. In this case, plaintiffs allege that defendants maintain an official policy of strip searching all arrestees detained in a cell. Assuming this is true, plaintiffs have standing to sue for injunctive relief.

Defendants argue, however, that plaintiffs' claim for injunctive relief is moot because defendants changed their strip search policy to conform with the law before plaintiffs filed their complaint on January 31, 2002. According to Joseph G. Ryan, Captain in the Orange County Sheriff's Office, the Orange County Attorney's Office began a review of the county's strip search procedure for pretrial detainees in January, 2001. The Sheriff's Office circulated a new inmate search policy on August 1, 2001, which was formally adopted by Sheriff Bigger on August 20, 2001. Therefore, defendants claim that at the time this suit was filed, the OCCF did not maintain a uniform practice or official policy of strip searching all detainees.[3]

Plaintiffs respond that while the Court may consider the voluntary change in policy when deciding whether to exercise its judicial power to grant an injunction, a defendant's change in policy does not deprive the court of its power to grant such an injunction. *See City of Mesquite v. Aladdin's Castle, Inc.,* 455 U.S. 283, 289, 102 S.Ct. 1070, 71 L.Ed.2d 152 (1982). The Supreme Court has stated that "a defendant's voluntary cessation of a challenged practice does not deprive a federal court of its power to determine the legality of that practice." *Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.,* 528 U.S. 167, 189, 120 S.Ct. 693, 145 L.Ed.2d 610 (2000). A suit will be rendered moot by a defendant's voluntarily change in a policy only if it is "absolutely clear that the alleged wrongful behavior could not reasonably be expected to recur." *Laidlaw,* 528 U.S. at 189, 120 S.Ct. 693 (quoting *United States v. Concentrated Phosphate Export Ass'n,* 393 U.S. 199, 203, 89 S.Ct. 361, 21 L.Ed.2d 344 (1968)). The party asserting mootness has a "heavy burden of persuading the court that the challenged conduct cannot reasonably be expected to start up again." *Id.* (internal citations omitted).

In this case, defendants have a strong mootness argument because they claim that before plaintiffs brought suit they had changed their strip search policy to conform to the law. Plaintiffs respond, however, that even the new policy which defendants purport to have put in place, is unconstitutional. Plaintiffs also assert that, even if defendants changed their formal written policy, they still maintain a blanket strip search policy that calls for the body cavity search of all detainees arriving at the OCCF. Plaintiffs have thus overcome defendants' standing and mootness arguments.

## II. Preliminary Injunction

Whether plaintiffs are entitled to a preliminary injunction is another question.

---

**3.** This is one respect where this case differs from *Maneely.* In that case, the parties agreed that defendants changed their policy, but the change was made after defendants received the plaintiff's Notice of Claim. *Maneely,* 2002 WL 999317, at *4. Therefore, the plaintiff in *Maneely* had a stronger argument that the change in policy did not moot injunctive relief.

In order to prevail on a motion for a preliminary injunction, a plaintiff must demonstrate:

(a) that it will suffer irreparable harm in the absence of an injunction and (b) either (i) a likelihood of success on the merits or (ii) sufficiently serious questions going to the merits to make them a fair ground for litigation and a balance of hardships tipping decidedly in the movant's favor.

*Tom Doherty Assocs., Inc. v. Saban Entm't, Inc.*, 60 F.3d 27, 33 (2d Cir.1995) (citing *Polymer Technology Corp. v. Mimran* 37 F.3d 74, 77–78 (2d Cir.1994); *Reuters Ltd. v. United Press Int'l, Inc.*, 903 F.2d 904, 907 (2d Cir.1990); *Jackson Dairy, Inc. v. H.P. Hood & Sons, Inc.*, 596 F.2d 70, 72 (1979) (per curiam)). When the public interest is involved in a preliminary injunction decision, "a Court should give some consideration to the balance of such interests in deciding whether a plaintiff's threatened irreparable injury and probability of success on the merits warrants injunctive relief." *Rodriguez v. ex rel. Rodriguez v. DeBuono*, 175 F.3d 227 (2d Cir.1999) (citing *Time Warner Cable of New York City v. Bloomberg, L.P.*, 118 F.3d 917, 929 (2d Cir.1997)).[4]

■ A district court must conduct a hearing on a motion for preliminary injunction where the essential facts are in dispute. *Fengler v. Numismatic Americana, Inc.*, 832 F.2d 745, 747 (2d Cir.1987) (quoting *Visual Sciences, Inc. v. Integrated Communications, Inc.*, 660 F.2d 56, 58 (2d Cir.1981)); see also *In re Rationis Enter., Inc. of Panama*, 261 F.3d 264, 269 (2d Cir.2001). There are circumstances, however, where a hearing may not be necessary. Preliminary injunction hearings have been denied when a movant does not make a sufficient showing of irreparable harm, *SCM Corp. v. Xerox Corp.*, 507 F.2d 358, 360–61 (2d Cir.1974), when credibility is not at issue, *Sugarhill Records Ltd. v. Motown Record Corp.*, 570 F.Supp. 1217, 1222 (S.D.N.Y.1983), when the right to a hearing has been waived, *Consolidated Gold Fields PLC v. Minorco, S.A.*, 871 F.2d 252, 256 (2d Cir.1989) amended by 890 F.2d 569 (2d Cir.1989); *Drywall Tapers & Pointers Local 1974 v. Local 530*, 954 F.2d 69, 77 (2d Cir.1992), and when additional evidence

will not change the court's finding, *Republic of Philippines v. New York Land Co.*, 852 F.2d 33, 37 (2d Cir.1988). The Court also may decide the motion for a preliminary injunction based on the written record without holding a hearing. *Redac Project 6426, Inc. v. Allstate Ins. Co.*, 402 F.2d 789, 790 (2d Cir.1968) ("there is no hard and fast rule in this circuit that oral testimony must be taken on a motion for a preliminary injunction or the court can in no circumstances dispose of the motion on the papers before it.").

In *Fengler*, the Second Circuit reversed a district court's decision to issue a preliminary injunction without a hearing. 832 F.2d at 747. The Court of Appeals found that there were essential facts in dispute because the defendant had offered an affidavit with specific factual allegations directly countering those of the plaintiff.

■ Similarly, in this case, there are essential facts in dispute—whether, in August, 2001, defendants changed their strip search practice to comply with the law, and whether any change was more than merely nominal. Defendants claim that they did, and that their current strip search policy is constitutionally-compliant, on its face as well as in practice. Defendants further assert that any improper body search that has occurred since August 2001 is an aberration that is not indicative of a policy or practice attributable to the defendants under *Monell v. Department of Social Services*, 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978). On the other hand, plaintiffs contest that defendants changed their policy. Plaintiffs also assert that even if defendants maintained a formal written policy that complied with the law, that does not eliminate the possibility that their practice was something different from their formal written policy.

Each side has supported its claims with declarations calling into doubt the credibility of the other side's assertions. Plaintiffs have put forth the declarations of Anthony Dodge, Joseph Petriello, Wallace Babcock and the affidavit of Gordon Barnum, Jr. in support of their position that defendants had a blanket strip search practice after August, 2001.

---

4. This is another issue that was not raised in

*Maneely*, 2002 WL 999317.

Babcock and Barnum claim that at the time they arrived at the Orange County Jail all other newly-arrived inmates were being strip searched. Plaintiffs ask for a hearing so that they may question deputies and recent inmates about whether defendants are making individualized determinations of reasonable suspicion before they conduct their strip searches.

In this case, it is the plaintiffs who have requested a hearing on the preliminary injunction issue. Generally the party opposing the injunction asks for the right to a hearing. *See Fengler*, 832 F.2d at 748. However, the fact remains that there are essential facts in dispute that may be elucidated by a hearing. If defendants did indeed change their policy to conform to the law well before this lawsuit was filed, and have complied with that policy ever since, then a preliminary injunction ordering them to do just that would not be appropriate.

I therefore order a hearing to determine, for the purposes of the preliminary injunction motion, what policy defendants have had in place since August, 2001. This hearing will begin on June 24, 2002. The Court will then be able to determine whether a preliminary injunction should issue.

### III. Motion for Class Certification

Plaintiffs also move for class certification under Federal Rules of Civil Procedure 23(a) and (b)(2), or in the alternative, (b)(3).

▮▮▮▮ The Supreme Court has held that district courts must conduct a "rigorous analysis" into whether the prerequisites of Rule 23 are met before certifying a class. *General Tel. Co. v. Falcon*, 457 U.S. 147, 161, 102 S.Ct. 2364, 72 L.Ed.2d 740 (1982); *see also Caridad v. Metro–North Commuter R.R.*, 191 F.3d 283, 291 (2d Cir.1991). The Court has broad discretion in certifying a class, but class certification standards should be applied liberally. *Gary Plastic Packaging Corp. v. Merrill Lynch*, 903 F.2d 176, 179 (2d Cir.1990); *Selby v. Principal Mut. Life Ins. Co.*, 197 F.R.D. 48, 54 (S.D.N.Y.2000). In deciding a motion for class certification, the Court must treat all of the allegations of the complaint as true. *Pecere v. Empire Blue Cross and Blue Shield*, 194 F.R.D. 66 (E.D.N.Y.2000) (citing *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 178, 94 S.Ct. 2140, 40 L.Ed.2d 732 (1974)). "[T]he question is not whether the plaintiff or plaintiffs have stated a cause of action or will prevail on the merits, but rather whether the requirements of Rule 23 are met." *In re Visa Check/MasterMoney Antitrust Litigation*, 280 F.3d 124, 133 (2d Cir.2001) (citing *Eisen*, 417 U.S. at 178, 94 S.Ct. 2140).

The basic criteria for the certification of a class action are:

(1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the class, (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and (4) the representative parties will fairly and adequately protect the interests of the class.

Fed.R.Civ.P. 23(a); *Visa Check*, 280 F.3d at 132–33; *Shankroff v. Advest, Inc.*, 112 F.R.D. 190, 193 (S.D.N.Y.1986).

Additionally, one of the three elements of Rule 23(b) must also be satisfied. *See Visa Check*, 280 F.3d at 133; *Bresson v. Thomson McKinnon Securities*, 118 F.R.D. 339, 344–45 (S.D.N.Y.1988). In this case, plaintiffs proceed under both Rule 23(b)(2) and Rule 23(b)(3). Rule 23(b)(2) provides for the maintenance of a class action if "the party opposing the class has acted or refused to act on grounds generally applicable to the class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the class as a whole[.]" Fed. R.Civ.P. 23(b)(2). Class certification under Rule 23(b)(3) is appropriate only if "the court finds that the questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy." Fed.R.Civ.P. 23(b)(3).

### A. Rule 23(a)

#### 1. Numerosity

▮▮▮▮ Rule 23(a)(1) provides that a member of a class may sue on behalf of all

class members only if "the class is so numerous that joinder of all members is impracticable." Fed.R.Civ.P. 23(a)(1). Plaintiffs need not prove the exact number of class members, only that the class is so numerous that the joinder of all potential plaintiffs would be difficult or inconvenient. *See Robidoux v. Celani*, 987 F.2d 931, 935 (2d Cir.1993); *Pecere v. Empire Blue Cross and Blue Shield*, 194 F.R.D. 66, 69 (E.D.N.Y.2000); *Primavera Familienstiftung v. Askin*, 178 F.R.D. 405, 409 (S.D.N.Y.1998).

Defendants concede that there are too many potential class members in this case for joinder to be practical. They argue instead that the number of potential plaintiffs is so large that the class would be unmanageable. This argument relates to the manageability of the class, rather than the numerosity requirement.

Plaintiffs have estimated, based on Officer Kehlenbeck's testimony, that approximately seven thousand inmates are processed by the Orange County Jail each year. (Pl.'s Mem. in Supp. of Class Certification and Inj. Relief at 2.) While one can fairly infer that some—perhaps many—of those detainees/arrestees were strip searched in a constitutionally-compliant manner, one can also infer from this large number that joinder of all members would be impracticable. Therefore, plaintiffs have met the Rule 23 numerosity standard.

### 2. Commonality

■■■ The second prong of the Rule 23(a) test requires plaintiffs to demonstrate that "there are questions of law or fact common to the class." Fed.R.Civ.P. 23(a)(2). Rule 23(a)(2) does not require the plaintiffs to demonstrate that the class members' claims are identical. *Caridad*, 191 F.3d at 293. Rather, it demands that the disputed issue of law or fact "occup[ies] essentially the same degree of centrality to the named Plaintiffs' claim as to that of other members of the proposed class." *Krueger v. New York Tel. Co.*, 163 F.R.D. 433, 442 (S.D.N.Y.1995); *see also In re "Agent Orange" Prod. Liab. Litig.*, 818 F.2d 145, 166–67 (2d Cir.1987). The commonality requirement may be met where the individual circumstances of class members differ, but "their injuries derive from a unitary course of conduct by a single system." *Marisol A. v. Giuliani*, 126 F.3d 372, 377 (2d Cir.1997) (per curiam) (finding commonality where a proposed class of children argued that "a unitary course of conduct" by the city department for children's services would place them at risk of abuse or neglect).

■■■ Defendants argue that the individual nature of the damage claims and issues surrounding each detention overwhelm the issues that are common to plaintiffs' claims. Defendants concede, however, that the Rule 23(a) commonality requirement is not as demanding as the predominance standard of Rule 23(b)(3). *See Amchem Prods. Inc. v. Windsor*, 521 U.S. 591, 609, 623–24, 117 S.Ct. 2231, 138 L.Ed.2d 689 (1997).

■■■ As I did in *Maneely*, I find that the alleged uniform application of defendants' blanket strip search policy presents questions of law and fact that are common to the proposed class. 2002 WL 999317, at *6. The common legal issue is whether the defendants implemented a uniform, indiscriminate policy of strip searching all persons arrested for criminal and non-criminal violations in the absence of reasonable suspicion. This shared question is sufficient to meet the commonality requirement. *See Augustin v. Jablonsky*, No. 99 CV 3126(DRH)(ARL), 2001 WL 770839, at *4 (E.D.N.Y. Mar. 8, 2001) (finding commonality in a strip search class action because the "common factual question occupying a position of 'centrality' to this litigation is whether Defendants engaged in a policy under which all members of the putative plaintiff class were strip searched ... without individualized legal suspicion"); *Daniels v. City of New York*, 198 F.R.D. 409, 413 (S.D.N.Y.2001) (finding that the commonality requirement was satisfied for a putative class of arrestees where the claimed injuries resulted from an unconstitutional practice of stopping and frisking individuals without the reasonable suspicion required by the Fourth Amendment). Whether individual issues will overwhelm the common questions is reserved for the discussion of predominance under Rule 23(b)(3). *See Visa Check*, 280 F.3d at 136 n. 3; *Augustin*, 2001 WL 770839, at *4–5 (citing *Daniels*, 198 F.R.D. 409, 417–18

(S.D.N.Y.2001); *In re Copley Pharm., Inc.,* 158 F.R.D. 485, 489, 491 (D.Wyo.1994)).

### 3. Typicality

█ The typicality requirement mandates that the claims of the class representatives must be typical of those of the class. This requirement is satisfied "if the claims of the named plaintiffs arise from the same practice or course of conduct that gives rise to the claims of the proposed class members." *Marisol A.,* 929 F.Supp. at 691. Defendants do not contest that the "typicality" requirement is satisfied despite the different factual circumstances surrounding each arrest since each has the same question at its core—whether defendants maintained an unconstitutional strip search policy.

### 4. Adequacy of Representation

The adequacy of representation requirement is two-fold: plaintiffs' counsel must be qualified and experienced enough to conduct the class action litigation, and the interests of the named plaintiffs must not be adverse to those of the class.

█ Plaintiffs' proposed counsel, the law firm of Dupée, Dupée & Monroe, P.C. and Robert N. Isseks, are experienced attorneys in the field of civil rights suits and class actions. In *Maneely,* I recently found that these attorneys were qualified to represent a class of persons who allege that they were subjected to an illegal strip search policy maintained by the City of Newburgh. 2002 WL 999317, at *6. I also find counsel to be qualified and experienced to conduct the class action litigation in this case.

Defendants argue that plaintiffs' counsel has not adequately prosecuted this case because they waited too long to conduct discovery. Defendants assert that if counsel had been aware of defendants' current strip search policy they would have realized they could not maintain either a(b)(2) a(b)(3) class. They argue that plaintiffs' counsel should have resolved plaintiffs' individual claims instead of moving for class certification. Defendants accuse plaintiffs' attorneys of putting their interests, and the interests of the putative class, ahead of the welfare of the named plaintiffs. I do not agree with defendants that plaintiffs' counsel acted improperly by seeking class certification. Plaintiffs' attorneys have diligently prosecuted this case, and are clearly qualified to represent the class.

█ As was true in *Maneely,* the plaintiffs' fitness to represent the class is more complicated. Plaintiffs argue that they share a common legal theory with the proposed class members, in that they all were subjected to strip searches conducted pursuant to an unconstitutional blanket strip search policy that did not take into account whether there was reasonable suspicion that the individuals searched were concealing weapons or contraband. Plaintiffs assert that the defendants' policy of strip searching all arrestees charged with criminal or non-criminal offenses represents a course of conduct directed against every person arrested and held in the OCCF during the class period.

Defendants respond that the named plaintiffs are not adequate class representatives because the strip searches conducted on them were proper under the reasonable suspicion standard. They note that before these plaintiffs may be found to be adequate representatives for the class, the Court would have to hold a hearing to decide whether the officers lacked reasonable suspicion to believe that each was concealing a weapon or contraband, thereby providing cause to conduct a strip search. Defendants are correct. No person could become a member of the proposed class until it was determined that there was no reasonable suspicion for a search in his individual case. The policy may have applied to everyone, but some persons who were strip searched pursuant to the policy could have been legally searched.

█ If a class is certified predominantly for the purpose of providing injunctive relief, this will be less of a concern, since plaintiffs have the same interest as the rest of the proposed class in litigating the constitutionality of defendants' strip search policy. If I find that a(b)(2) class is not appropriate, I will not certify the proposed (b)(3) class, but will instead certify only a partial class along the lines of the class certified in *Maneely.* Plaintiffs are adequate class representatives

for the partial class, described *infra* at 13, because it is in their interest, as it is in the interest of the rest of the class members, to argue that defendants' strip search policy is unconstitutional. That the class representatives may be precluded from recovering damages at a recovery stage is irrelevant, because the individual questions of reasonable suspicion will arise only after the constitutionality of defendants' allegedly blanket strip search policy is determined on a class-wide basis.

### B. Rule 23(b)(2)

 Class certification under Rule 23(b)(2) is appropriate where "broad, class-wide injunctive or declaratory relief is necessary to redress a group-wide injury." *Robinson v. Metro–North Commuter R.R. Co.,* 267 F.3d 147, 162 (2d Cir.2001).[5]

In *Robinson,* the Second Circuit noted that Rule 23(b)(2) does not specify whether certification under this section is appropriate if monetary relief is also sought. 267 F.3d at 162. An advisory committee note to Rule 23(b)(2) states that "[t]he subdivision does not extend to cases in which the appropriate final relief relates exclusively or predominantly to money damages." Fed.R.Civ.P. 23(b)(2), advisory committee note (1966).

 The *Robinson* court established an ad hoc approach to determining whether (b)(2) certification is appropriate in cases seeking anything other than "incidental" damages. *Robinson,* 267 F.3d at 164. The Second Circuit directed district courts to hold a class certification hearing to weigh "the relative importance of the remedies sought." *Id.* (citing *Hoffman* 191 F.R.D. at 536). The district court should allow (b)(2) certification where:

> (1) the positive weight or value to the plaintiffs of the injunctive or declaratory relief sought is predominant even though compensatory or punitive damages are also claimed, and (2) class treatment would be efficient and manageable, thereby achiev-

ing an appreciable measure of judicial economy.

*Id.* at 164 (internal citations omitted). The minimum standard for allowing (b)(2) certification is (1) that a reasonable plaintiff would bring suit to obtain injunctive relief even if monetary recovery were not possible, and (2) injunctive relief would be "both reasonably necessary and appropriate were the plaintiffs to succeed on the merits." *Id.* The court also warned that "insignificant or sham requests for injunctive relief should not provide cover for (b)(2) certification of claims that are brought essentially for monetary recovery." *Id.*

 Hence, in order to determine whether (b)(2) certification is appropriate, the Court must weigh the importance of the injunctive relief and monetary relief which the plaintiffs seek. If it is true that defendants' strip search policy comports with the law of the Circuit during the class period, then I would tend to agree with them that injunctive relief holds less importance to the plaintiffs than the monetary relief that they might recover in compensation for any violation of their constitutional rights. I have already found that a preliminary injunction hearing is necessary in this case in order to determine whether defendants, despite their protestations, continue to maintain a policy of strip searching misdemeanor arrestees without reasonable cause. If plaintiffs are correct that defendants' unconstitutional policy is still in force, then the request for injunctive relief is neither insignificant nor a sham.

### C. 23(b)(3) Certification

Plaintiffs have also moved for class certification under Rule 23(b)(3).

A class action may be maintained under Rule 23(b)(3) if the Court finds that the questions of law or fact common to the members of the class predominate over any questions affecting individual members, and that a class action is superior to all available methods for the fair and just adjudication of the controversy. Fed.R.Civ.P. 23(b)(3).

---

**5.** The proposed class representative in *Maneely* did not seek (b)(2) certification. In that case, plaintiff conceded that the defendants' strip search policy had been changed to comply with

the law. He thus did not have a strong argument for the predominance of injunctive relief. *Maneely,* 2002 WL 999317, at *4.

▇▇▇▇ To meet the Rule 23(b) predominance standard, plaintiff must demonstrate that "the issues in the class action that are subject to generalized proof, and thus applicable to the class as a whole, ... predominate over those issues that are subject only to individualized proof." *Visa Check*, 280 F.3d at 136 (citations and internal quotations omitted). The 23(b)(3) predominance requirement is "more stringent" and "far more demanding than" the commonality requirement of Rule 23(a). *Amchem*, 521 U.S. at 623–24, 117 S.Ct. 2231; *see also Blyden v. Mancusi*, 186 F.3d 252, 269 (2d Cir.1999) (referring to the "heightened requirements" of Rule 23(b)(3)).

The Rule sets forth four factors for the court to consider in deciding the superiority of a class action:

> (1) the interest of members of the class in individually controlling the prosecution or defense of separate actions; (2) the extent and nature of any litigation concerning the controversy already commenced by or against members of the class; (3) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and (4) the difficulties likely to be encountered in the management of the class action.

Fed.R.Civ.P. 23(b)(3); *Amchem*, 521 U.S. at 615–16, 117 S.Ct. 2231 (1997).

▇▇▇ Plaintiffs assert that the uniform application of defendants' blanket strip search policy presents questions of law and fact that are common to the proposed class. Plaintiffs argue that defendants did not conduct an individualized assessment of the need for each search, and therefore deprived each potential plaintiff of his constitutional rights. Hence, all potential plaintiffs have a single legal theory, which arises under similar factual circumstances.

Defendants argue that individual issues respecting class membership and personal damages claims will predominate over the common issues that plaintiffs identify.

With respect to 23(b)(3) certification, the case at hand is identical to *Maneely*, 2002 WL 999317, at *7. In *Maneely*, I decided to certify a partial class as to the issue of whether the City of Newburgh maintained a policy of strip searching all pre-arraignment prisoners, with or without having reasonable suspicion to believe that these persons were carrying or concealing weapons or contraband.

District court judges have disagreed about whether to certify classes in cases with facts similar to this one. *See Maneely*, 2002 WL 999317, at *8 (citing cases). In *Augustin*, for example, Judge Hurley considered the "predominance" question of Rule 23(b)(3) as applied to a strip search case and concluded that certification was inappropriate because class members' individual damage claims would dominate the case. 2001 WL 770839, at *13. In reaching this conclusion, the *Augustin* court expressed concern that each plaintiff would have to present individualized proof of damages. He noted, however, that the court in *Tyson v. City of New York* was not as troubled by the damages question, because the court could seek the assistance of a magistrate judge or a special master if resolving individual damage issues became unmanageable. No. 97 CIV–3762 (S.D.N.Y. Mar. 18, 1998) (oral decision) (cited in *Augustin*, at *11–12).

In *Maneely*, I certified only a partial class, not out of concern that individual damages questions might make a class action difficult to manage, but because certifying the proposed class would have required individualized determinations about the circumstances of each putative class member's arrest in order to establish class membership.

The Second Circuit has urged district courts to take advantage of partial certification under Federal Rule 23(c)(4)(A) in order to "reduce the range of disputed issues in complex litigation and achieve judicial efficiencies." *Robinson v. Metro–North Commuter R.R.*, 267 F.3d 147, 167–68 (2d Cir. 2001) (internal quotations and citations omitted); *see also Visa Check*, 280 F.3d at 140–41. As in *Maneely*, there is a common issue at the core of this case—whether defendants maintained an unconstitutional blanket strip search policy. In light of this common issue, I find that partial certification of a class would be appropriate here. While the question of whether a (b)(2) class would be the

more effective method of litigating this case still remains, if after the hearing on that issue I decide that (b)(2) certification is inappropriate, I will certify a partial class under 23(c)(4)(A). That class would be certified as to the issue of whether the Orange County Sheriff's Office maintained a policy of strip searching all pre-arraignment prisoners, with or without having reasonable suspicion to believe that these persons were carrying or concealing weapons or contraband. An appropriate class period should become apparent after the hearing.

### CONCLUSION

For the foregoing reasons, plaintiffs' request for a preliminary injunction hearing is granted. That preliminary injunction hearing will be combined with a class certification hearing to determine whether class certification under Rule 23(b)(2) is appropriate, or whether partial class certification under Rule 23(c)(4)(A) would be the best method for adjudicating this case. The hearing is scheduled to begin on June 24, 2002.

This constitutes the decision and order of the Court.